MELVIN H. LEON, Plaintiff-Appellee, *v.* MAX E. MILLER & SON, INC., Defendant-Appellant.

(No. 58712;

First District (2nd Division)—October 8, 1974.

*Rehearing denied November 7, 1974.*

Arvey, Hodes & Mantynband, of Chicago (Ralph A. Mantynband and Ann Rosen, of counsel), for appellant.

Jerome Berkson, of Chicago, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant, Max E. Miller & Son, Inc. (hereinafter Miller & Son), appeals from a summary judgment entered in favor of plaintiff, Melvin H. Leon, for the sum of $45,471 and against defendant on its counter-claim.

Plaintiff brought this action to recover monies due under an employ-ment contract. In his complaint and affidavits filed in support of the motion for summary judgment, plaintiff alleged that defendant is in the business of mortgage banking and that in May 1965, he entered into an oral contract of employment with defendant whereby plaintiff was em-ployed as an administrative executive in the capacity of vice-president at an annual salary of $20,00 plus 25% of all commissions received from either borrowers or investors on all matters solicited, negotiated, or otherwise administered by plaintiff in the ordinary course of business. After plaintiff commenced his employment, he repeatedly requested a

written agreement setting forth the terms of his compensation, as had been promised by Joseph Miller, the president of, and principal shareholder in, Miller & Son. After repeatedly being "put off," plaintiff had an agreement prepared, and on November 19, 1965, presented it to Joseph Miller who signed it in plaintiff's presence and retained a copy. The agreement read:

### "AGREEMENT

It is agreed and understood that in addition to the annual salary of Twenty Thousand (20,000) Dollars and reimbursed expenses to be paid by Max E. Miller & Son, Inc., 33 North LaSalle Street, Chicago, Illinois, Melvin H. Leon is to receive as additional compensation twenty five (25%) percent of all commissions and finders fees received from either the borrower or investor on all matters solicited by, or negotiated by, or otherwise administered by Melvin H. Leon in the ordinary course of handling such transactions.

This additional compensation is to be pa'd to Melvin H. Leon upon receipt of such funds by Max E. Miller & Son, Inc.

Max E. Miller & Son, Inc.
By: (s) Joseph R. Miller
_____

Joseph R. Miller, President
_____ "

Melvin H. Leon

During the course of plaintiff's employment he repeatedly made requests of defendant for the payment of commissions pursuant to the terms of the agreement. Some commissions were paid, while others were not. Finally, after numerous refusals of payment by defendant, plaintiff resigned from defendant's employ in October 1968 and brought this action.

In its answer, defendant admitted that plaintiff was employed at an annual salary of $20,000 under an oral agreement, but denied all other material allegations. Further, as an affirmative defense, defendant alleged that the written document upon which plaintiff based his recovery was prepared by plaintiff's counsel and was presented to Joseph Miller in November of 1965; that Joseph Miller directed plaintiff to deliver the document to a certain law firm for review and a legal opinion; that, subsequently, plaintiff falsely represented and warranted to Joseph Miller that the document had been submitted to and approved by said law firm and that it was their recommendation that Joseph Miller should execute the document on behalf of the corporate defendant; that, in

fact, plaintiff had never exhibited the document to said law firm; and that no member of said law firm either approved the document or recommended its execution. Plaintiff filed a reply denying that he was directed to deliver the agreement to defendant's attorney or that he ever represented to Joseph Miller that defendant's attorney had approved it.

In his deposition, Joseph Miller testified that "he directed Leon to show to his lawyer a piece of paper which he had not read and did not know what its contents were"; that after returning with the document, Leon stated that "[e]verything looks fine." Miller further stated in his deposition that he could not recall exactly what was said by Leon. He testified that although he had no recollection of signing the document that was presented at that time, he "may" have signed it, and the signature appeared to be his own. In his affidavit, Miller stated that he most probably signed the document, but explained that he often signed documents without reading them when presented to him by an employee whom he trusted. He further stated that he did not have a conversation with his attorney relative to that document prior to the commencement of the present lawsuit; and that the first time he was aware of the contents of the document was in October 1968 when plaintiff presented it to him and demanded payments under the contract. At this time, Miller stated that he fired Leon "because of his general attitude that everything was due him and he had to perform nothing for it."

As an alternative defense, defendant alleged that if the document memorialized an agreement of the parties, it was terminated shortly thereafter by the establishment of a new employment relationship.[1] As a second alternative affirmative defense, defendant alleged that the contractual phrase—"all matters solicited by, negotiated by, or otherwise administered by Melvin H. Leon in the ordinary course of handling such transactions"—is ambiguous and subject to construction under the principle of *ejusdem generis* and by looking to the conduct of the parties and ascertaining the construction they themselves have placed upon the ambiguous terms. (See *Street v. Chicago Wharfing & Storage Co.*, 157 Ill. 605.) Defendant admitted that it had agreed to pay a 25% commission to plaintiff when the latter solicited either a borrower or an investor on any one transaction, and contended that the phrase—"negotiated by, or otherwise administered by"—is to be construed as referring, under

---

[1] The alternative defense was properly stricken for failure to allege facts sufficient to constitute a defense. Although given ample opportunity, defendant failed to avail itself of the leave granted to plead over, and failed to argue the defense in its answer to plaintiff's motion for summary judgment. Consequently, its appellate arguments on this point do not present a reviewable issue.

the above-mentioned constructional rules, only to matters "solicited" by plaintiff.

Defendant asserts that the language is ambiguous because under the words "administered by," Leon could claim commissions on all business in which he participated in any manner. This, defendant maintains, is inherently unreasonable and therefore ambiguous. To further demonstrate the ambiguity of the language and the "lack of equity," defendant refers us to the nature of the business and the consequences of allowing plaintiff to recover commissions on business merely administered by him.

Joseph Miller, as principal shareholder and president of Miller & Son, conducted a small mortgage banking business, and employed two vice-presidents, Harold Leifer and Melvin Leon, who did substantially the same work and received substantially the same form of compensation— an annual salary and a 25% commission on all business solicited by them. Because of the small nature of the business, each of the officers at one time or another would "administer" in some way almost every item of business engaged in by Miller & Son. Thus, if plaintiff would be entitled to a commission on all business which he "administered," he would receive an annual salary of $20,000 plus 25% of the gross receipts. The result, defendant submits, is patently unfair and unreasonable.

Defendant further alleged that the conduct of the parties indicated that plaintiff was to receive a 25% commission only when he solicited the business, but not when he merely negotiated or otherwise administered a transaction. In support thereof, defendant asserted that of the approximately 20 transactions in which plaintiff was involved during his period of employment, he solicited 4 and received a 25% commission on each. As to the remaining transactions, which plaintiff may have negotiated or administered in some way, plaintiff never pursued a claim to participate in any such commission. Further, defendant alleged that it employed one Harold Leifer in the same capacity as plaintiff, and that under the terms of an oral agreement with Leifer, defendant was to pay Leifer a salary and a 25% commission only on business which was procured by him. Moreover, defendant alleged that in the mortgage banking business, there existed a common custom and usage that employees of mortgage banking houses would receive in addition to their basic salaries a commission earned on business procured by them for their employers. Defendant did admit, however, that on several occasions it had paid Leifer and plaintiff bonus commissions as though they had jointly solicited the transaction. The effect of the bonus commission was to grant both Leifer and plaintiff a 12½% commission on transactions which had not been solicited by either of the parties. These, however, were strictly bonuses and not legal entitlements. Thus, under the terms of the

agreement, plaintiff was entitled to a 25% commission only on matters which he solicited, and for such transactions he was duly paid; however, plaintiff was not entitled to commissions on transactions which he merely negotiated or administered.

On appeal, defendant initially argues that summary judgment was inappropriate in that there existed disputed factual issues as to the execution of the employment contract, or alternatively, the terms of employment.

■■ In viewing defendant's contentions, we note that the purpose of summary judgment proceedings is to determine whether there is any genuine triable issue of fact which must be passed upon. (*Hendricks v. Deterts*, 13 Ill.App.3d 976, 301 N.E.2d 625.) If the pleadings, discovery depositions, and affidavits present a genuine issue as to any material fact, summary judgment should be denied. (*Morris v. Anderson*, 121 Ill.App.2d 169, 259 N.E.2d 601.) However, the factual issues which are disputed must be material to the essential elements of the cause of action or defense; and those which are unrelated, regardless of how sharply controverted, do not warrant the denial of summary judgment if otherwise proper. (*Cibis v. Hunt*, 48 Ill.App.2d 487, 199 N.E.2d 246.) Moreover, where properly alleged facts in affidavits in support of a motion for summary judgment are not contradicted by counter-affidavits, the facts so averred must be taken as true, notwithstanding the existence of contrary averments in the pleadings of the adverse party which purport to raise issues of fact. *Fooden v. Board of Governors*, 48 Ill.2d 580, 272 N.E.2d 497; *Renieris v. Village of Skokie*, 85 Ill.App.2d 418, 299 N.E.2d 345.

From these general precepts, we turn first to defendant's affirmative defense of fraudulent misrepresentation. Viewing the pleadings, affidavits, and deposition in a light most favorable to defendant, it appears that Joseph Miller was presented with a document relative to plaintiff's terms of employment; that he directed that it be presented to a law firm for a legal opinion; that plaintiff falsely represented that he had complied with Miller's directions and had obtained approval; and that said document was then re-presented to Joseph Miller who subsequently signed the document without having read its terms.

■■ One is under a duty to learn, or know, the contents of a written contract before he signs it, and is under a duty to determine the obligations which he undertakes by the execution of a written agreement. (17 C.J.S. *Contracts* § 137b (1963).) And the law is that a party who signs an instrument relying upon representations as to its contents when he has had an opportunity to ascertain the truth by reading the instrument and has not availed himself of the opportunity, cannot be heard to say

that he was deceived by misrepresentations. (*Nathan v. Leopold,* 108 Ill. App.2d 160, 247 N.E.2d 4.) Apart from the above rules, to avoid a contract for false representations, the character of the representation and the circumstances under which it was uttered must have been such as to give the injured person a right to rely thereon. *Morel v. Masalski,* 333 Ill. 41, 164 N.E. 205.

We initially note that although defendant is required to substantiate the allegations of its defensive pleading (*Fooden v. Board of Governors, supra.*), the evidentiary matters submitted by defendant indicate that the only statement made by Leon after returning with the document, was that "[e]verything looks fine." Moreover, an examination of the record reveals that no facts were alleged from which it may be inferred that plaintiff had an affirmative duty to disclose the terms of the agreement.

■■ Notwithstanding defendant's failure to substantiate the claims of his defense, a consideration of those allegations would nevertheless lead to the conclusion that the trial court properly granted summary judgment against defendant's affirmative defense. Under the allegations, defendant has failed to demonstrate both the materality of the alleged misrepresentation and its right to rely upon it. (See *Gateway Securities Co. v. Schultz,* 321 Ill.App. 312, 52 N.E.2d 825 (abstract opinion).) Plaintiff made no representations as to the contents of the agreement, but merely a collateral matter—the presentation of the document to defendant's attorney and his approval of it. There are no facts alleging that defendant's attorney knew the terms of plaintiff's employment so that a legal opinion could be rendered, nor did defendant attempt to communicate those terms to its attorney subsequent to plaintiff's initial presentation of the document. Defendant has failed to substantiate the allegations of his defensive pleading, and moreover, has failed to present any facts, assuming the truth of the allegations, sufficient to constitute a defense. Thus, the legal efficacy of the employment contract was properly ruled upon.

■■ Defendant's alternative defense is that the phrase—"all matters solicited by, negotiated by, or otherwise administered by Melvin H. Leon in the ordinary course of handling such transactions" is ambiguous and subject to construction. As we understand defendant's argument, it alleges that because the word "administered" is ambiguous and subject to interpretation, the words "solicited," "negotiated," and "administered" are ambiguous in relation to each other, and therefore, under the constructional rules asserted by defendant, we properly deprive the words "negotiated" and "administered" of any legal effect insofar as they relate to matters not solicited by plaintiff. We disagree. The three words em-

ployed within the subject phrase are in the disjunctive and fairly denote separate and distinct aspects of a particular transaction, and thus, their interrelationship is not ambiguous. Since each of the words "solicited," "negotiated," and "administered" fairly particularizes a distinct aspect of a transaction, the rule of *ejusdem generis* is inapplicable. Although we accept defendant's hypothetical assertion that the individual words may be considered ambiguous, *i.e.*, what is intended by "administered * * * in the ordinary course of handling such transactions," defendant neither requests a construction of the individual words, nor disputes the operative facts of the particular transactions. In the proceedings below, plaintiff filed an affidavit stating that he performed the following services in connection with the transactions in which he claimed a commission: he analyzed the inquiries, obtained the necessary documentation for the preparation of the mortgage loan offerings (such as plans, specifications, cost data, and financial statements of the corporation or sponsors), prepared the loan offering, negotiated the loan request with the investor, and submitted loan offerings to investors with whom the affiant had developed business relations over a period of many years, and procured commitments from these various investors. Defendant does not point out, nor does our search of the record reveal, a denial of the above statements. Accordingly, they are admitted as true (*Fooden v. Board of Governors, supra*), and as such, are clearly within the meaning of the subject phrase.[2] In light of the foregoing, the trial court properly ordered summary judgment in favor of plaintiff on his complaint and against defendant on its defenses.

Defendant also filed a three-count counterclaim, only two counts of which are pertinent to this appeal. In Count I, defendant alleged that it is in the business of mortgage banking which consists primarily of securing loans for clients from various corporate lenders such as insurance companies; that Melvin Leon, counter-defendant, was assigned to obtain and prepare the necessary financial information pertaining to one of its clients, Abe Swed and Associates (hereinafter Swed), for the purpose of inducing a corporate lender to make loans to the borrower-applicant; that counter-defendant induced counter-plaintiff to believe that Swed had a net worth substantially in excess of $1,000,000; that, in fact, Swed was insolvent and had no net worth, and that Swed's insolvency would have been discovered upon a proper investigation. Miller & Son alleged that Leon had been negligent in his examination and ac-

---

[2] There facts, standing uncontradicted, further refute defendant's assertion that the contract is inherently unreasonable because plaintiff could claim a commission on every transaction handled by defendant regardless of plaintiff's degree of participation in the matter.

quisition of the necessary financial information, and that as a proximate result thereof, counter-plaintiff was damaged in the sum, of $75,000.

In his answer to the counterclaim, Leon denied that he "induced" counter-plaintiff to believe that Swed had a net worth of $1,000,000, in that Joseph Miller had full access to all financial information involved and fully supervised counter-defendant's handling of the transaction, and Joseph Miller personally approved of the loan and counter-defendant's handling of the same. In his affidavit, Leon further stated that the failure of the Swed deal was nothing more than a typical risk incurred by mortgage bankers in the ordinary course of business, and that the administrative procedures employed by affiant in the Swed transaction were the usual and customary procedures followed in all other transactions handled by Miller & Son.

In his deposition, Joseph Miller testified that had Leon performed the credit investigation in the usual and customary manner, by contacting the various creditors of Swed, the latter's insolvency would have been discovered. Miller denied that he fully supervised Leon's handling of the transaction, and further testified that Leon induced Miller & Son to loan Swed $32,000, and induced one of its investor-clients to approve a loan to Swed. Swed's insolvency was subsequently uncovered by the investor, resulting in "a year's work thrown down the drain," the filing by Miller & Son of three related lawsuits against Swed, and the payment of attorney's fees. Swed was subsequently discharged in bankruptcy.

Count III of the counterclaim alleged that Leon, during the term of his employment, was entrusted with Miller & Son's confidential lists of investors, secret trade sources of funds, and other confidential matters; that in or about October 1968, Leon removed the aforesaid from the offices of Miller & Son, for which counter-plaintiff sought an accounting and injunction. Counter-defendant denied the allegations and testified in his affidavit that when he left the employ of Miller & Son he did not remove any files, lists of investors, or other trade secrets. Based upon his 22 years of experience in the mortgage brokerage business, he further testified that there are no trade secrets in the business in that commercial investors and lending institutions are known to the public at large and retain no special relationship with any particular mortgage banking institution to the exclusion of any other mortgage brokerage house.

It is asserted by defendant that the information was not merely a list of names and addresses, but reflected the idiosyncrasies of the individual investors, the character of the loans which they preferred, and

other valuable data resulting from Joseph Miller's subjective analysis made over a long period of time.

We initially note that the record pertaining to the counts of the counterclaim is factually meager in many important respects, and therefore, all inferences from the matters presented are to be construed in a light most favorable to counter-plaintiff. (*Chrysler Credit Corp. v. M.C.R. Leasing Co.*, 118 Ill.App.2d 111, 254, N.E.2d 153.) Furthermore, on appeal, counter-defendant does not attack the legal sufficiency of the allegations, but argues a "lack of substance" in the allegations. Whatever the ultimate merits of the counterclaim may be, it was encumbent upon counter-defendant to demonstrate that no material issue of fact was presented. This he has failed to do.

■■ As to Count I, the parties dispute the standard of care which is normally exercised in making credit investigations, the conduct of Leon in the Swed transaction, the conduct of Miller in supervising that matter, and whether counter-plaintiff had fully acquiesced in Leon's alleged omission of performance. As to Count III, the parties dispute the basic fact of whether the lists were converted, and further dispute the character of those lists. From the record before us, and the arguments of counsel, we cannot say that counter-defendant's right to invoke summary judgment was free from doubt. See *Wegener v. Anna*, 11 Ill.App.3d 316, 296 N.E.2d 589.

In view of the foregoing, the order of the circuit court granting summary judgment in favor of Melvin Leon on the complaint is hereby affirmed with enforcement stayed pending determination of the counterclaim; the order granting summary judgment against Miller & Son on its counterclaim is hereby reversed and remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed and remanded in part with directions.

HAYES, P. J., and LEIGHTON, J., concur.