EDITH L. LAMMERT, Plaintiff-Appellant, *v.* LAMMERT INDUSTRIES, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)  Nos. 63104, 63176, 63173 cons.

Opinion filed March 1, 1977.

Edwin H. Conger and William G. Nosek, both of Chicago (Tenney & Bentley, of counsel), for appellant.

Earle S. Rappaport, Jr., and Barney Padnos, both of Chicago, for appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Edith L. Lammert, appeals from three orders entered by the

circuit court subsequent to the entry of a default judgment in favor of plaintiff and against defendants. The first order appealed from vacated the default judgment pursuant to section 72 of the Civil Practice Act. (Ill. Rev. Stat. 1973, ch. 110, par. 72.) Appeals are also taken from two orders quashing citations to discover assets· which proceedings were pending at the time the default judgment was entered. Plaintiff presents the following issues for review: (1) whether the petition filed by defendants pursuant to section 72 was substantially insufficient at law, (2) whether the trial court erred by failing to conduct an evidentiary hearing on the petition, and (3) whether the trial court erred in quashing the citation proceedings. The pertinent facts follow.

In October of 1974, plaintiff filed a verified complaint seeking monetary relief pursuant to a contract entitled "Consultation and Non Competition Agreement" which had been entered into by plaintiff's husband and defendants on February 14, 1969. By the terms of the agreement, plaintiff's husband was employed by defendant Lammert Industries, Inc. (hereinafter "Lammert"), to serve as general manager and consultant to Lammert in its business activities. Compensation for these services was set at $1100 per month for a period of six years. Defendant Nicholas D. Glyptis, a principal officer of Lammert, executed a rider to the foregoing agreement whereby he became a guarantor of the corporation's performance of its obligations pursuant to the terms of the agreement. The agreement further provided that in the event of the death of plaintiff's husband, plaintiff would be entitled to monthly payments of $1100 until the termination of the contract in 1975. It was alleged in the complaint that plaintiff's husband died on July 2, 1969, and that monthly payments in accordance with the terms of the contract had been made to him until the date of his death and thereafter to plaintiff until March 31, 1971, when the payments ceased. Plaintiff prayed for recovery of the remaining payments due under the provisions of the contract.

Defendants were duly served with summons and a copy of the complaint in October of 1974. When neither an appearance nor an answer to the complaint was filed by defendants, plaintiff moved for a default judgment. On December 9, 1974, a default judgment was entered in favor of plaintiff on her verified complaint and against defendants in the amount of $46,620.

On November 3, 1975, defendants filed a petition for relief from judgment and for stay of proceedings. Plaintiff responded by filing an answer to the petition, asserting various affirmative defenses therein. Affidavits were filed in support of both pleadings.

The petition set forth the following allegations and chronology of events: defendants were served with summons in October of 1974; Glyptis, both individually and on behalf of Lammert, engaged the legal

services of Ronald Brown to represent defendants in this matter; thereafter, Brown advised Glyptis that he (Brown) was actively representing defendants' interests; at or near the time this action was commenced, an action in chancery for foreclosure relating to the same transactions giving rise to the instant controversy was filed against Lammert and certain other parties; Glyptis, on behalf of Lammert, engaged the services of Brown to represent Lammert in the chancery proceeding; Brown filed an appearance, answer and affirmative defense on behalf of Lammert in the chancery proceeding on or about February 5, 1975; on December 9, 1974, a default judgment in the amount of $46,620 had been entered against defendants in the instant case; after the entry of the default judgment, plaintiff pursued various supplemental proceedings such as filing citations to discover the assets of defendants; on April 22, 1975, a nonwage garnishment summons was served on First Security Bank of Addison inquiring as to whether any assets of Glyptis were in the bank's possession; "immediately" upon learning of this garnishment summons, Glyptis contacted Brown and inquired as to the meaning of this situation, whereupon Brown advised that an error had occurred and that he (Brown) would straighten the matter out in his continuing effort to represent the best interests of defendants; Brown never informed defendants of the default judgment which had been entered against them; "upon examination of the court file" defendants ascertained that no appearance, answer or affirmative defense had been filed on their behalf in the instant case and that the answer and affirmative defense filed on behalf of Lammert in the chancery proceedings had been stricken by order of court and no further pleadings filed; and due to his physical condition, Glyptis was under medical treatment and confined to his home for a period of one year prior to the filing of the petition, rendering it impossible for Glyptis to properly pursue his defense in the instant case or to effectively stay abreast of the lawsuit as it developed. Defendants prayed for a vacature of the default judgment and an order staying all supplemental proceedings.

By affidavit in support of the petition, Glyptis stated, in pertinent part, that he was informed by Brown on numerous occasions prior to the date on which the default judgment was entered that Brown had filed an appearance on behalf of defendants and was defending defendants in this lawsuit; that a neurological condition required Glyptis to rely upon counsel to attend to defendants' affairs and defend against this action; that subsequent to being served with summons, Glyptis "received notice of other actions being taken by Plaintiff herein, including a Nonwage Garnishment," whereupon Glyptis consulted Brown and was advised that an error had occurred and that Brown would rectify the situation; that on or about October 10, 1975, Glyptis learned of other developments in this

case, whereupon he engaged new counsel, Barry Padnos, to investigate the situation; and that upon being apprised of the default judgment entered against defendants, Glyptis retained Padnos and his associate who then filed the section 72 petition. Affiant further stated that a meritorious defense was available to defendants against plaintiff's claims. He alleged that the personal services contract upon which this suit is predicated was executed in conjunction with the acquisition by Glyptis of the assets of Lammert and Mann Corporation. As a result of this acquisition, defendants planned to market a product previously manufactured by Lammert and Mann Corporation. Affiant alleged that had plaintiff's husband not made certain material misrepresentations concerning the quality of the product, defendants would neither have acquired the assets of Lammert and Mann Corporation nor entered into the consultation agreement. As a second defense to plaintiff's claims, it was alleged that plaintiff's husband, as a fiduciary of Lammert pursuant to the consultation agreement, breached the contract by failing to reveal to defendants the fraudulent labeling of the product which misrepresented the quality of the product.

A second affidavit was filed in support of the petition wherein Glyptis' physician stated that Glyptis had been undergoing medical treatment for a terminal illness as an out-patient in his home for a period of 2½ years.

By her answer to the petition, plaintiff admitted that certain procedural developments and court rulings had transpired in both this case and the chancery proceedings. However, plaintiff claimed to be without sufficient knowledge to assess the correctness of Glyptis' statements regarding Glyptis' retention of and conversations with counsel. Plaintiff requested strict proof as to when defendants first ascertained that no answer and defense had been filed on their behalf. Plaintiff enumerated the various supplemental proceedings initiated by her subsequent to the entry of the default judgment, including the commencement of a citation proceeding against Glyptis' wife on or about October 10, 1975.

The answer also set forth a summary of the proceedings in the chancery action. It was alleged that on December 17, 1974, Brown filed a petition to consolidate the instant case with the chancery proceeding. An order was entered by the circuit court in the chancery action acknowledging defendants' desire to consolidate the two cases and granting defendants in the chancery action an extension of time to January 17, 1975, to plead to the complaint. Brown filed an answer and affirmative defense on behalf of Lammert on February 5, 1975. Plaintiff in the foreclosure suit then filed a request to admit facts and genuineness of documents on March 4. Two days later, a default judgment was entered in favor of plaintiff against all defendants to that action except Lammert. When Lammert failed to respond in timely manner to the request served upon it, Lammert thereby

admitted the matters of fact and the genuineness of the documents relevant to the claim for foreclosure. This chain of events culminated in the entry of a summary decree of foreclosure and sale on June 10, 1975.

Plaintiff concluded her answer to the section 72 petition by advancing four affirmative defenses. Plaintiff contended that defendants are chargeable with the knowledge of their attorney; that the allegations of fact contained in the petition failed to establish either the exercise of due diligence by defendants in filing the petition or the existence of an excusable mistake occasioning the delay in filing the petition; that the petition failed to establish a meritorious defense to plaintiff's claims; and that the defenses raised by defendants were waived by defendants' failure to comply with certain notice provisions contained in the contract by which defendants acquired the assets of Lammert and Mann Corporation.

Also before the trial court when it considered the petition was the affidavit of one of plaintiff's attorneys, William Nosek. Nosek stated that he was called by Padnos on September 11, 1975. Padnos related to affiant that he was considering representing Glyptis and consequently he sought more information concerning the case. Affiant summarized the events which had occurred to date. Padnos called Nosek again on the following day and requested affiant to postpone a scheduled citation proceeding. Affiant had no further contact with Padnos until they appeared at a citation hearing on October 27, 1975.

A hearing was held on the section 72 petition on November 10, 1975. Contrary to plaintiff's arguments, the trial court ruled that the facts alleged in the petition and supporting affidavits were uncontroverted, rendering an evidentiary hearing on the petition unnecessary. The court considered only the date on which Glyptis retained the services of Padnos to be in dispute. By affidavit, Glyptis placed this date around October 10, while Nosek's affidavit indicates that the date of retention must have occurred on or before their initial conversation on September 11. The court did not believe that this one discrepancy necessitated an evidentiary hearing on the petition.

Also during the hearing, the court was advised that Brown had failed to respond to a subpoena ordering his appearance at this proceeding. Counsel for plaintiff then presented the following offer of proof:

"Well, I submit the following offer, that if Ronald Brown were sworn and testified before the Court this afternoon, if asked whether he had the conversations with Mr. Glyptis in the words and substance that Mr. Glyptis set forth, he would answer no, that if asked whether as alleged in his petition to consolidate the defense in the two cases, were substantially the same, he would answer yes, that if asked why he did not file the response to the

request to admit facts [in the chancery proceeding] that was served upon him as counsel for Lammert Industries, Inc., a response that would deny those requested admissions, that his answer would be that he could not file a sworn denial because the denial would be untrue, and that in fact the facts which we request was posted were true."

After entertaining further arguments of counsel, the court ruled that a sufficient showing of due diligence on the part of defendants had been made. In reaching this determination, the court considered Glyptis' physical condition and the fact that Brown assured Glyptis that he was defending the lawsuit to be particularly significant. The court also ruled that a meritorious defense to the allegations contained in the complaint was adequately advanced in Glyptis' affidavit. In accordance with these findings, the court ordered the vacature of the default judgment and all other proceedings in this cause then pending. As a result of this order, two citation proceedings then pending before other circuit court judges were subsequently quashed.

■■ Section 72 provides a procedure for obtaining relief from final orders, judgments and decrees after the passing of 30 days from the date of entry thereof. A motion to vacate a default judgment pursuant to section 72 is addressed to the equitable powers of the court which entertains the petition (*Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 190 N.E.2d 348), and whether or not the relief prayed for should be granted lies within the sound discretion of the court, depending upon the facts and equities presented. (*Goldman v. Checker Taxi Co.* (1967), 84 Ill. App. 2d 318, 228 N.E.2d 177.) Upon review of the decision, an appellate court is justified in disturbing the judgment of the trial court only when it finds that the discretion vested in the trial court has been abused. *George F. Mueller & Sons v. Ostrowski* (1974), 19 Ill. App. 3d 973, 313 N.E.2d 684.

■■ To be entitled to relief pursuant to section 72, a party must plead and prove facts sufficient to justify relief (*In re Estate of Wayne* (1971), 133 Ill. App. 2d 565, 273 N.E.2d 720), and the quantum of proof necessary to sustain a section 72 petition is a preponderance of the evidence. (*McKinnon v. Yellow Cab Co.* (1975), 31 Ill. App. 3d 316, 333 N.E.2d 659.) When seeking relief from a default judgment, the petition must affirmatively set forth facts showing the existence of a meritorious defense and the exercise of due diligence on the part of petitioner in presenting both a defense to the lawsuit and the section 72 petition. (*Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 236 N.E.2d 719; *Hall v. Hall* (1973), 15 Ill. App. 3d 599, 304 N.E.2d 763.) It is essential that both elements, meritorious defense and due diligence, be shown since the purpose of a section 72 proceeding is to bring facts not

appearing of record to the attention of the trial court which, if known to the court at the time judgment was entered, would have prevented its rendition. (*Akers v. Christen* (1973), 11 Ill. App. 3d 369, 296 N.E.2d 774.) Thus, in order to effectively state a cause of action warranting relief pursuant to section 72, a petitioner must show that his failure to defend against the lawsuit was the result of an excusable mistake. (*Johnson-Olson Floor Coverings, Inc. v. Branthaver* (1968), 94 Ill. App. 2d 394, 236 N.E.2d 903.) In making this showing, a section 72 petitioner is normally bound by the negligence of his legal counsel which resulted in the entry of a default judgment, but a court may refuse to impute such negligence to the petitioner when mitigating circumstances are present. *Department of Public Works & Buildings v. O'Hare International Bank* (1976), 44 Ill. App. 3d 934, 358 N.E.2d 1308; *Mieszkowski v. Norville* (1965), 61 Ill. App. 2d 289, 209 N.E.2d 358.

■■ With regard to the trial court's ruling in the instant case that the petition and supporting affidavits adequately alleged a meritorious defense, we note that the judge who entered the default judgment also considered the petition. Since, as set out above, one purpose of a section 72 petition is to bring before the court matters of fact which, if known at the time judgment was entered, would have prevented the entry of the default judgment, the judge who entered the initial judgment was in the best position to assess the impact of the defense advanced in the petition. Furthermore, we agree with the trial court's ruling that the allegations of fraud and breach of fiduciary relationship were sufficient to state a meritorious defense. See *Leon v. Max E. Miller & Son* (1974), 23 Ill. App. 3d 694, 320 N.E.2d 256.

■■ However, contrary to the ruling of the trial court, we conclude that the petition fails to allege facts showing the exercise of due diligence on the part of defendants in both defending the cause and filing the petition. Section 72 does not afford a litigant a remedy whereby he may be relieved of the consequences of his own mistakes or the negligence of his trial counsel (*Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 165 N.E.2d 294), and it is the duty of every litigant to follow the progress of his case, rather than to merely assume that his counsel is doing everything which is necessary and proper in the conduct thereof. (*Stewart v. Beegun* (1970), 126 Ill. App. 2d 129, 261 N.E.2d 495.) In this regard, the court's attention is not restricted to the circumstances preceding the default judgment, but it may also consider the conduct of the parties after the judgment is entered. *Ulrich v. Glyptis* (1967), 79 Ill. App. 2d 447, 224 N.E.2d 581.

In the instant case, defendants rely upon the following allegations contained in their petition for establishing the requisite showing of due diligence: that upon receipt of summons, Glyptis immediately retained legal representation; that Glyptis was assured by his original counsel on

several occasions prior to the entry of the default judgment that counsel was attending to defendants' best interests; that defendants did not learn of the default judgment until some 4½ months after its rendition when a garnishment summons was served upon Glyptis' bank; that upon learning of the garnishment summons, Glyptis promptly notified Brown who assured him that a mistake had been made and that Brown would correct it; that when Glyptis realized in October that other supplemental proceedings had been instituted by plaintiff, he retained new counsel to investigate this matter and to take appropriate action which resulted in the filing of the section 72 petition; and that due to a terminal illness, Glyptis was required to place greater reliance on his legal representative to defend in this lawsuit.

When the circumstances of this case are viewed in their entirety, we conclude that defendants have failed to sustain their burden of alleging facts which, if true, would entitle them to the relief requested. Conspicuously absent from the petition are allegations tending to show due diligence on the part of Brown, the attorney originally retained by defendants in this matter. (*Cf. Ulrich v. Glyptis* (1967), 79 Ill. App. 2d 447, 224 N.E.2d 581.) Since parties are generally bound by the negligence of their counsel, this omission in the petition is noteworthy. Indeed, no explanation was offered in the petition as to what action, if any, was taken by Brown, other than filing eight days after the entry of the default judgment a petition to consolidate this action with the chancery proceeding then pending. Nor was an excuse advanced for counsel's failure to appear, answer and defend the lawsuit. Significantly, the petition also fails to allege that defendants and their counsel were without notice or knowledge of either the trial date or plaintiff's intention to seek a default judgment. (See *Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304, 357 N.E.2d 518; *Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 236 N.E.2d 719.) On the face of both the petition and the record, no facts are presented which tend to establish due diligence by Brown.

■■ In an attempt to divorce themselves from the conduct of their counsel, defendants claim that they exercised due diligence since they immediately retained counsel upon being served with summons; received several assurances from counsel that he was representing their interests in the lawsuit; and immediately consulted Brown upon learning of the garnishment summons served on Glyptis' bank. In essence, defendants contend that no more should have been required of them in following the progress of this case under the circumstances confronting them. Even if we considered this conduct of defendants prior to trial and for a period of four months subsequent to the entry of the default judgment when the garnishment summons was served as evidencing due diligence, and if the negligence of counsel is not imputed to defendants, defendants' conduct

after April of 1975 when the garnishment summons was served until November of 1975 when the section 72 petition was filed fails to meet the standard of due diligence required for relief pursuant to section 72. Although defendants contend that Glyptis notified Brown in April immediately upon learning of the garnishment summons, Glyptis concedes that he took no other affirmative action in this matter until the following October when he retained new counsel. Defendants argue that this conduct was reasonable in light of the fact that Brown assured Glyptis that the garnishment proceeding was erroneously instituted and that Brown would correct that situation. However, the record reveals that plaintiff was awarded judgment on June 5, 1975, on the garnishee's answer to the summons and that plaintiff was awarded in excess of $800, the amount contained in a joint savings account of Glyptis and his wife. The petition does not mention this fact, nor is it suggested how Glyptis could have been unaware of this event. Also in the record is an order of the circuit court entered on September 15, 1975, whereby a proceeding on a citation to discover assets was continued to a later date. The order provides that it was agreed upon by "plaintiff, the Harris Trust and Savings Bank and Nicholas D. Glyptis." In contrast, it is alleged in the petition that it was "On or about October 10, 1975, when the Affiant [Glyptis] learned of other transactions being taken in this cause * * *." Thus arises an inconsistency in which a 25-day period is unaccounted for in the petition. Another unexplained inconsistency is, on the one hand, evidence contained in the record of numerous futile attempts to serve notice on Glyptis of the supplemental proceedings and, in comparison, Glyptis' affidavit stating that he was confined to his home throughout this period. These inconsistencies and omissions in the petition prompt us to conclude that the petition fails to establish due diligence on the part of defendants and thus fails to state a cause of action warranting relief pursuant to section 72.

■■ We are aware of decisions holding that justice and good conscience may require that a default judgment be set aside to allow a defendant a day in court even though there has been a lack of due diligence on his part. (*E.g., George F. Mueller & Sons v. Ostrowski* (1974), 19 Ill. App. 3d 973, 313 N.E.2d 684.) For example, it has been reasoned that service of execution more than 30 days after the rendition of a default judgment casts a "cloud" on the proceedings which a court may consider when determining the sufficiency of a section 72 petition. (*E.g., Ellman v. De Ruiter* (1952), 412 Ill. 285, 106 N.E.2d 350; *Hall v. Hall* (1973), 15 Ill. App. 3d 599, 304 N.E.2d 763.) And it has been noted that in light of the voluminous litigation in Cook County, default judgments frequently occur, and therefore, section 72 should be liberally applied to afford relief in such instances. (*Park Avenue Lumber & Supply Co. v. Hofverberg, Inc.* (1966), 76 Ill. App. 2d 334, 222 N.E.2d 49.) But the ambit

of section 72 relief must not be overbroadened to such an extent that principles of equity and an ordered concept of justice are diluted. See *Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 236 N.E.2d 719.

In the instant case, it is true that plaintiff did not see fit to execute on the default judgment until some 4½ months after its rendition. But after this date, more than 6 months elapsed before a section 72 petition was filed. As set out above, we do not believe defendants acted diligently during this latter period, nor do we believe that the facts alleged justify a collateral attack upon a final judgment 11 months after it was entered. Accordingly, we vacate the order of the circuit court which vacated the default judgment, and the cause is remanded for further proceedings not inconsistent with the views expressed herein. Due to our resolution of this issue, it is unnecessary for us to address the other issues raised by plaintiff.

Order vacated; cause remanded with directions.

DOWNING, P. J., and PERLIN, J., concur.