JAMES CABAK et al., Plaintiffs-Appellants, *v.* THE CITY OF ST. CHARLES, Defendant-Appellee.

Second District No. 76-379

Opinion filed May 26, 1978.—Rehearing denied July 17, 1978.

Gates W. Clancy and William B. Phillips, both of Geneva, for appellants.

Alvin A. Catella, of St. Charles, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

This is a purported class action for declaratory judgment and injunctive relief. The six plaintiffs own residential properties outside of the City of

St. Charles. These homes, as well as the homes of other individuals similarly situated, are connected to the city sewage system. This action concerns the rates presently charged the plaintiffs for sewage service, and the conflict between these rates and those set by alleged contracts between the parties. The original complaint was dismissed; the court specifically finding that the contracts relied upon by the plaintiffs were unenforceable and that various rate setting ordinances were valid. Leave was granted to file an amended complaint which was dismissed with prejudice in the same order. The plaintiffs appeal.

The parties appear to assume here that those reasons given regarding the initial dismissal apply to the dismissal of the amended complaint. The major issue before us is whether the amended complaint was properly dismissed.

The facts of this matter are as follows. On January 1, 1963, the St. Charles city council passed an ordinance setting the monthly rate for residential sewage service at $1.50. On January 6, 1964, the city entered into a contract with four development companies which allowed those four companies to connect a sewage system developed by them in the Wildrose Valley area to the municipal sewage system. By the provisions of that contract (hereinafter known as the four company contract) the city was ceded title to the developed sewage system. In return, the city agreed to allow the four companies to connect lots still owned by them to the city sewage system and to afford the owners of lots previously sold by the four companies the opportunity to connect to the system. Under that contract the city was acknowledged as having the final authority to modify or change the various fees charged to the users of the system as economic conditions made necessary.

Subsequent to the execution of the four company contract the plaintiffs and approximately 150 other individuals executed documents, drafted by the city, which purported to be contracts. These documents (hereinafter referred to as property owner contracts) provide, in pertinent part, as follows:

> "It is therefore agreed that upon a connection being made thereto and the necessary fees being paid therefor the User will pay the current sewer service charge plus 50% surcharge for the use of the disposal plant plus Fifty Cents (50¢) per month for the sewer main maintenance charge."

On May 16, 1967, the city council passed ordinance No. 1967—16 which provided for a sewer service charge based upon the gallons of water used by a city resident. The same ordinance provided that nonresident users would be charged a 50% surcharge in addition to the resident rate. This ordinance was clearly consistent with the property owner contracts.

On August 4, 1975, ordinance No. 1975—M—30 was passed. It

provided that residents of the city would be charged, based on metered water consumption, as follows:

"$4.50 per quarter plus $0.45 per 1000 gallons of water used or where water consumption does not reflect the actual quantity of waste water tributary to the waste water treatment works $4.50 per quarter plus $0.45 per 1000 gallons of waste water actually discharged into the sewer system."

The August 1975 ordinance further provided that those city residents not using metered city water would be charged at the flat rate of $3.50 per month for their sewer service.

As to nonresident sewer service users, ordinance No. 1975—M—30 stated as follows:

"Residential: A sewer service availability charge for sewer service to residential users outside the city limits shall be the sum equal to an additional 150% over the applicable basic user charge."

On December 15, 1975, the city council passed ordinance 1975—M—45 amending the nonresident provision of 1975—M—30, to read as follows:

"Residential: $4.50 per quarter plus .45¢ per 1000 gallons water used (where city water is not provided to a sewer user it is assumed that 30,000 gallons per quarter is discharged into the sewer system); plus an additional sewer line, operation, maintenance and depreciation charge of $3.70 per month per user."

On January 9, 1976, the plaintiffs filed this purported class action to declare their property owner contracts valid and enforceable; to declare ordinances 1975—M—30 and 1975—M—45 unconstitutional; to permanently enjoin the city from charging sewer rates in violation of their property owner contracts; and to order an accounting and refund of all excessive charges.

The city filed a motion to dismiss the complaint based on section 48 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 48). Although the defendant did not state in its motion the subsection upon which it was based, it has been argued before this court by the defendant that it was relying upon section 48(1)(i) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 48(1)(i)). No affidavits were filed by the city in support of its motion. However, the city did file various briefs and memoranda. First the city argued that the four company contract gave it the authority to modify or change sewage service rates. Second, the defendant argued that the property owner contracts lack consideration and are, therefore, unenforceable, or, in the alternative, that the property owner contracts are executory, without a term of duration, and are terminable at the will of either party. Third, the defendant cited section 11—141—7 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—141—7) and

contended that it only had statutory authority to regulate nonresident sewage service rates by ordinance.

The trial court granted the defendant's section 48 motion and the order of dismissal was signed on April 1, 1977, at 10 a.m. In that order the trial court found that the property owner contracts between the individual plaintiffs and the city were not legally binding contracts. Second, it found that as a matter of law the sole power of the city to alter the rates charged for nonresident sewer service is by ordinance.

At 11 a.m. on April 1, 1977, the plaintiffs filed an amended complaint with leave of court. The sole amendment made was the inclusion of an allegation that section 11—141—7 was unconstitutional in that it failed to provide for notice to non-residents before their sewer service rate is changed. After oral arguments of counsel, and without a written motion to dismiss on file, the amended complaint was dismissed.

The first problem we face is what was the basis for the dismissal of the amended complaint. The trial court's order dismissing the amended complaint with prejudice fails to recite the grounds therefor. The record before us is devoid of any transcript of the oral argument held at 11 a.m. on April 1, 1976, which preceded the dismissal. In addition, it fails to disclose any written motion filed by the defendant which pertained to the amended complaint. Therefore, since the defendant relied on section 48(1)(i) of the Civil Practice Act in its written motion to dismiss the initial complaint, and since the amended complaint is virtually identical, we will assume for the purpose of this appeal that the' defendant reiterated its section 48(1)(i) motion to dismiss and we will apply the arguments and rationale of that motion to the amended complaint.

Due to the fact that the defendant failed to file affidavits in support of its section 48 motions to dismiss, the affirmative matter relied on by it must appear on the face of the complaint attacked (Ill. Rev. Stat. 1975, ch. 110, par. 48(1)) or must be something of which the court may take judicial notice. Appearing on the face of the plaintiff's complaint is the reference to the property owner contracts. Several such contracts appear in the record as exhibits. Additionally, the complaints recite that the plaintiffs are successors in interest to the four-company contract, said contract also appearing as a part of this record. Finally, the defendant relied upon the provisions of section 11—141—7 of the Illinois Municipal Code which provides, in substance, for the operation of a sewer system by a municipality outside the corporate boundaries and the authority of the municipality, by ordinance, to set rates and charges for non-resident users of the sewerage system. Since this is a statute in force at all times relevant hereto, the court may take judicial notice of its existence and its content.

■■ We first examine the dismissal of the amended complaint in light of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—141—7). The city argues that this statute requires that sewer service charges must be established by ordinance. It also argues that a municipality has no power to set such charges by contract. We do not agree with this analysis.

■■■ We observe that a municipality, such as the defendant, has been authorized by State statute, since 1961, to contract with the State, other municipalities, or with any person, for the collection and disposal of sewage originating outside of its corporate limits (Ill. Rev. Stat. 1975, ch. 24, par. 11—146—1). Such a contractual relationship between a municipality and persons outside its limits is precisely the situation in the case at hand. In our view it cannot be disputed that such contracts may be enforced against the municipality (Ill. Rev. Stat. 1975, ch. 24, par. 2—2—12). Furthermore, the provisions of section 11—141—7 (Ill. Rev. Stat. 1975, ch. 24, par. 11—141—7) must be read *in pari materia* with those of section 11—146—1. Section 11—141—7 requires, where a contract exists between municipalities for sewage service, that any changes in charges or fees must be in accordance with such contracts. Similarly, where there are contracts between a municipality and individuals for sewage service, any changes in the fees or charges should be in accordance with such contracts. Lastly, a contract between the plaintiffs and the defendant does not interfere, per se, with the ability of the latter to pass ordinances dealing with sewage service charges. Indeed, the property owner contracts appear to contemplate such ordinances, stating that such ordinances shall set a "current sewer service charge" to which the non-resident users would add a 50% surcharge. Thus, the charge to the non-residents may be changed only insofar as it reflects the change in the rates to the residents of St. Charles. We therefore hold that section 11—141—7 (Ill. Rev. Stat. 1975, ch. 24, par. 11—141—7) does not constitute an affirmative matter which defeats the plaintiffs' claim.

■■ The defendant makes two additional arguments based on the law of contracts in support of its section 48 motion and upon which the trial court also relied. The first is that the documents executed by the city and the plaintiffs lacked consideration and were not valid contracts. In *Wickstrom v. Vern E. Alden Co.* (1968), 99 Ill. App. 2d 254, 261, 240 N.E.2d 401, 405, the court stated:

> "It appears that courts have required consideration for the enforcement of gratuitous promises. Such reason loses much of its force in that courts do not ordinarily inquire into the adequacy of the consideration, and any consideration, however slight, is legally sufficient to support a promise, except where the disparity is so gross as to raise a presumption of fraud."

We have examined the property owner contracts which appear as a part of this record and have concluded that they clearly possess sufficient consideration. (*Leisure v. Smith* (1973), 13 Ill. App. 3d 1070, 302 N.E.2d 177; *Nathan v. Leopold* (1969), 108 Ill. App. 2d 160, 247 N.E.2d 4.) The city of St. Charles promised to provide a system into which the property owner could dispose of his sewage at a price equal to the rate charged city residents, plus 50%. In return, the property owner promised to pay such rate, as well as a flat 50¢ per month sewer maintenance charge and further acknowledged that the city would have a lien upon his property for any unpaid charges or fees. We find this sufficient.

Finally, the defendant attacks the property owner contracts on the grounds that they are executory contracts without a definite duration and are, therefore, terminable at the will of either party. The defendant further contends in this regard that the passage of the ordinances involved here constituted the termination of those contracts. We do not agree. The ordinances did not refer to the property owner contracts. And, while it may be inferred that the ordinance rates are inconsistent with the rates of the plaintiffs' contracts, it may be inferred with equal validity that the ordinances only applied to those nonresidents, if any, who did not have contracts with the city. The statutes authorizing both ordinances and contracts are not inconsistent in their terms. The city may well have been utilizing both methods for setting nonresident sewage rates. Any effect of the ordinances as a repudiation of the contract is conjectural at best.

■■ Moreover, in our view, the proper method of terminating an executory service contract would be to give notice to the other parties of the proposed changes in rates, and. if not accepted by the property owners, then the service could be terminated. The record here is devoid of any notice, written or oral, upon the nonresident sewage service users to the effect that the terms of their contracts were being altered. Also, there was no notice of proposed termination by the city if the new rates were not accepted.

The two arguments of the defendant based upon contract law fail to present affirmative matters sufficient to avoid the legal effect of, or defeat the plaintiffs' claim or demand.

As to the defendant's argument based on the rate changing provision of the four company contract, we are constrained to observe that the plaintiffs are third-party beneficiaries under that agreement and as such it cannot be enforced against them, although they may enforce it against the original parties. Also, the four company contract, by its terms, fails to bind the successors and assigns of the four companies to the rate changing provision, or any other provision. Additionally, the four-company contract rate provision is superseded by the rate provisions of the property owner contracts which were drafted by the defendant and are

the subjects of this suit. Thus, the four company contract also fails to set forth affirmative matter sufficient to support a section 48 motion to dismiss.

For the foregoing reasons, the dismissal of the plaintiffs' amended complaint on the basis of a section 48(1)(i) motion to dismiss must be reversed and the cause remanded for further proceedings.

Reversed and remanded.

RECHENMACHER, P. J., and SEIDENFELD, J., concur.