CLEOTA GIBBONS, Plaintiff-Appellant, *v.* ALBERT W. GIBBONS, Defendant-Appellee.

Second District   No. 76-264

Opinion filed July 25, 1977.

Peter S. Switzer and Scott M. Boyd, both of Barrick, Jackson, Switzer, Long & Balsley, of Rockford, for appellant.

Roszkowski, Paddock, McGreevy & Johnson, of Rockford (John C. Tower, of counsel), for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

Cleota Gibbons filed a complaint for divorce on May 19, 1975. The parties entered into an oral property settlement agreement, which was approved by the court in its decree, which was entered on August 11, 1975. On February 20, 1976, Albert Gibbons filed a motion to vacate that portion of the decree dealing with marital property, attorney fees and related matters, pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72). An amended section 72 motion and a supporting affidavit were filed on March 11, 1976. In this amended motion Mr. Gibbons contended that the decree "neglected" to provide for the payment of certain debts which the parties owed Mrs. Gibbons' mother, and further that "it is in the best interest of the parties hereto that the decree of divorce be vacated insofar as said decree relates to matters of property owned by the parties and debts owed by the parties * * *." The circuit court granted Mr. Gibbons' motion and Mrs. Gibbons has appealed. She contends that the court was in error, since Mr. Gibbons failed to raise either a meritorious claim or defense, or a showing of due diligence.

Sometime before the filing of the complaint herein, the parties borrowed sums of money from their parents, a loan of $3,000 from Mr. Gibbons' mother being "unsecured," while two loans from Mrs. Gibbons' mother were evidenced by promissory notes in the amounts of $4,000 and $5,000. On June 9, 1975, attorney Peter Switzer, representing Mrs. Gibbons, wrote a letter to Mr. John Tower, counsel for Mr. Gibbons, suggesting a marital settlement under which Mr. Gibbons would convey his interest in the marital home to Mrs. Gibbons, pay her attorney fees, and receive half of the Cable TV stock owned by the parties in joint tenancy; in addition, the letter said that "We trust that Mr. Gibbons will take care of the $3,000 loan from his mother and Mrs. Gibbons will take care of outstanding debts which are due her mother * * *." On June 11, 1975, attorney Tower responded with a letter proposing that Mr. Gibbons quitclaim his interest in the marital home to Mrs. Gibbons in return for the payment, to him, of an amount equal to "one-half of the difference between the mortgage balance and the appraised value of the property less the $4,000 which Mrs. Gibbons borrowed from her father for a downpayment and then repaid." The letter proposed that Mr. Gibbons retain all interest in the Cable TV stock, and pay only half of Mrs. Gibbons' attorney fees. As to the debts allegedly due the parties' parents, it was suggested that Mr. Gibbons repay the loan from his mother and "Mrs. Gibbons will take care of any debts which are due her mother." The letter was closed with the suggestion "that we get together and discuss a

settlement of this case." Mr. Gibbons' supporting affidavit states that during negotiations prior to the divorce hearing, he was informed by his attorney that Mrs. Gibbons had agreed to "take care of outstanding debts which were due her mother," provided Mr. Gibbons would repay the loan to his mother.

A hearing was held on the complaint for divorce on August 4, 1975. Mrs. Gibbons was the only witness, although Mr. Gibbons was present with his attorney. She testified that the parties had agreed that Mr. Gibbons would quitclaim his interest in the marital home to her, with the financial equity in the home to be divided between the parties in the event that it was sold within a year after the entry of the decree; that she would give up her interest in the Cable TV stock, and that Mr. Gibbons would pay her attorney fees and costs. She gave no testimony concerning debts to the respective parents of the parties and Mr. Tower did not cross-examine her.

Later that same day, Mr. Switzer phoned attorney Tower to discuss the lack of testimony regarding the outstanding notes due Mrs. Gibbons' mother. Mr. Switzer told Mr. Tower that it was likely that a claim would be made against Mr. Gibbons on the notes if the matter was not covered by the decree. On August 5, 1975, Mr. Switzer sent a draft of the decree for divorce to Mr. Tower. The draft decree was silent as to debts owed the parents of the parties and was accompanied by a letter, which stated that, "[i]n line with our telephone conversation and since no proof was taken regarding the outstanding notes due Mrs. Gibbons' mother, I would anticipate that she might very well make a claim against your client for the amount due. Please discuss this with your client and give me a call." On August 8, 1975, Mr. Tower responded with a letter stating:

> "I am returning the original Decree to you with my approval noted in the margin * * *. I have told Mr. Gibbons that Mrs. Gibbons states there are outstanding notes due to her mother and that there might be a claim or suit filed to collect the unpaid notes. Mr. Gibbons denies that there is any money owed to his mother-in-law and is *willing to assume any risk of a suit being filed against him.* * * *." (Emphasis added.)

Sometime after the entry of the decree, Mrs. Gibbons, apparently having taken an assignment of the notes from her mother, demanded payment from Mr. Gibbons. Mr. Gibbons then instituted the instant proceeding under section 72. The supporting affidavit filed with Mr. Gibbons' amended section 72 motion, stated in part as follows:

> "When he was informed that the testimony of Mrs. Gibbons had not covered the agreement of the parties regarding payment of the aforementioned debts and that his ex-wife might make a claim against him, the undersigned believed that the debts due to the

mother of Mrs. Gibbons had been taken care of. \* \* \* [T]he undersigned had been advised prior to the divorce hearing that a debt of $5,000 had been repaid to the mother of Mrs. Gibbons."

The affidavit did not state who so "advised" Mr. Gibbons. Regarding the debt of $4,000 the affidavit recites that the note represented money which was advanced to the parties for making the down payment on their marital home, and that "[s]ince the undersigned conveyed his interest in the real estate to Mrs. Gibbons, he believed that she was then responsible for the repayment of the debt of $4,000."

■■ ■ From these facts we must conclude at the outset that Mr. Gibbons has failed to set forth a claim or defense that would justify setting aside the relevant portions of the decree. It is well established that the parties to a divorce action may voluntarily effect a settlement of their property and related interests and liabilities, and where such an agreement is incorporated in a consent divorce decree, the decree will not be set aside, absent a showing of fraud or coercion. (*James v. James* (1958), 14 Ill. 2d 295, 305; *Pearson v. Pearson* (1976), 42 Ill. App. 3d 522, 527; *Garmisa v. Garmisa* (1972), 4 Ill. App. 3d 411, 422-23.) Here, the closest Mr. Gibbons' motion and affidavit come to making an allegation of fraud or coercion is his statement that he had been "advised" that the note for $5,000 "had been taken care of." However, there is no allegation that Mrs. Gibbons or anyone acting for her so advised Mr. Gibbons. In fact, Mr. Gibbons was informed of the possibility of a claim on the notes prior to the approval of the decree by his counsel, or entry by the court, yet he stated that he would "assume any risk" of a suit being filed to enforce payment. Mr. Gibbons belief that he was no longer liable on the note for $4,000 was based solely upon the false assumption that his liability terminated when he quitclaimed his interest in the marital home to Mrs. Gibbons. Thus, there was neither a showing of a material misrepresentation by Mrs. Gibbons nor of reliance by Mr. Gibbons on any such representation.

■■ The record is equally devoid of a showing of due diligence by Mr. Gibbons. It has frequently been held that the procedure for obtaining relief from a final judgment or order under section 72 was not intended to relieve parties of the consequences of their own negligence. (*E.g., Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304, 310-11; *Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 467; *Lammert v. Lammert Industries, Inc.* (1977), 46 Ill. App. 3d 667, 673-74; *In re Pyles* (1976), 40 Ill. App. 3d 221, 223; *Campbell v. Kaczmarek* (1976), 39 Ill. App. 3d 465, 468; *Carroll & Neiman, Inc. v. Silverman* (1975), 28 Ill. App. 3d 289, 291.) Here, both Mr. Gibbons and his counsel were in court when Mrs. Gibbons testified and were or should have been aware of the fact that no testimony was taken concerning the alleged agreement that Mrs. Gibbons repay the

amounts owed her mother, yet Mrs. Gibbons was not cross-examined, and no comment concerning the notes was made at the hearing either by Mr. Gibbons or his counsel. That same day, and again by a letter on the following day, counsel for Mr. Gibbons was not only reminded that no testimony had been taken concerning the notes, but, in addition, was advised that a claim on the notes "might very well" be made against Mr. Gibbons. Nonetheless, instead of moving for a further hearing at which the question of whether the obligations to Mrs. Gibbons' mother had been fully paid or assumed by Mrs. Gibbons could have been explored, Mr. Gibbons authorized his counsel to approve the decree, in spite of its failure to contain any provision concerning the notes. On this record, Mr. Gibbons lack of diligence in presenting his claim that the notes to Mrs. Gibbons' mother were covered by the marital settlement agreement and should have been incorporated in the decree, is distinctly obvious.

A trial court abuses its discretion when it grants a motion to vacate a judgment pursuant to section 72, where there has been no showing of both a meritorious defense and due diligence. (*Lammert v. Lammert Industries, Inc.* (1977), 46 Ill. App. 3d 667.) Here, Mr. Gibbons failed to plead or prove either of these essential elements and it is therefore clear that the trial court erred in granting him relief under section 72.

The order of the circuit court of Winnebago County, vacating paragraphs B to F of the decree of divorce herein, is therefore reversed.

Judgment reversed.

SEIDENFELD and BOYLE, JJ., concur.