*In re* ESTATE OF ROBERT A. WAYNE, Deceased—(ELEANOR WAYNE, Executrix-Appellant.)

(No. 54037;

First District—July 14, 1971.

Nicholas T. Kitsos, of Chicago, (Allen S. Goldberg, of counsel,) for appellant.

Feiwell, Galper & Gordon, of Chicago, (George S. Feiwell, James S. Gordon, and Thomas C. Baratta, Jr., of counsel,) for respondents.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This proceeding was instituted on March 27, 1967, by the Executrix of the Estate of Robert Wayne under Section 72 of the Civil Practice Act (Ill. Rev. Stat. 1967, ch. 110, par. 72), to vacate an order entered by the Probate Division of the Circuit Court on December 23, 1965, which approved an agreement dated December 1, 1965, for the sale to Dorance

Enterprises, Inc., of all the assets of the Fred Astaire Dance Studios, Inc. (hereinafter referred to as the Wayne Corporation) an Illinois corporation solely owned by the Estate of Robert Wayne. After an evidentiary hearing, the petition to vacate was denied, and the Executrix appeals.

Robert Wayne died testate on March 15, 1964. He was survived by his widow, Eleanor Wayne, and by four children, three of whom were minors at the time of his death. His last Will was admitted to probate, and letters testamentary were issued to Mrs. Wayne, who was the sole beneficiary, devisee, and legatee of the estate under the provisions of the Will.

At the time of his death, Robert Wayne owned all of the outstanding shares in the Wayne Corporation, and these shares constituted the principal assets of his estate. The Wayne Corporation under an agreement executed in 1957 with the Fred Astaire Dance Studios, Inc., a New York corporation, (hereinafter referred to as the New York Corporation) held a franchise to operate dance studios in the midwest region for instruction in the Fred Astaire method of dancing. The Wayne Corporation, itself, operated a studio at 32 West Randolph Street in Chicago, Illinois, known as the Loop Studio, and in addition it granted a number of sub-franchises to operate throughout the area covered by the franchise agreement, including three sub-franchises to Gerald Rance, one of the individual respondents herein, and another to Dorothy Braun, the other individual respondent.

In February of 1965, Rance and Dorothy Braun combined their operations and incorporated under the name of Dorance Enterprises, Inc., (hereinafter referred to as Dorance). Later in the same month, Dorance acquired all the rights of the New York Corporation in the midwest region, including the right to enforce all provisions of the 1957 franchise agreement with the Wayne Corporation. Dorance then sought to purchase the assets of the Wayne Corporation, which was then being run by Mrs. Wayne; and on March 10, 1965, under an agreement signed by Mrs. Wayne, it obtained for the sum of $140,000.00, payable in monthly installments of $900.00, the Wayne Corporation's franchise interest in the midwest region except for the Loop Studio for which the Wayne Corporation received a sub-franchise. This agreement was negotiated by the parties themselves, and James Brandvik, the attorney for the estate, did not learn of the agreement until after it was executed. Approval of the agreement was never sought or obtained from the Probate Division of the Circuit Court.

In the latter part of 1965, the Wayne Corporation encountered serious financial difficulties; and as a result of certain alleged breaches of its franchise agreement with Dorance, it received a notice of termination of its right to operate as a Fred Astaire Dance Studio in a letter from

Dorance's attorney, Gerald Moro, which was dated October 29, 1965. After Mrs. Wayne received this letter she secured the legal services of Mrs. Antonio Rago Herbert and according to the testimony of James Brandvik, Mrs. Wayne then informed him that he should follow Mrs. Herbert's instructions.

During the month of November, 1965, numerous meetings were held between Mrs. Wayne, her attorney, Mrs. Herbert, Dorothy Braun, Gerald Rance, and their attorney, Gerald Moro. On November 23, 1965, Mrs. Wayne, Mrs. Herbert, and Moro participated in a five hour conference in which they reached a tentative agreement on terms for the sale of the assets of the Wayne Corporation. These terms were reduced to writing in a letter dated December 1, 1965, which was signed by the parties and their respective attorneys. Under this agreement Dorance purchased all the assets of the Wayne Corporation for $10,000.00 less amounts owed to it by the Wayne Corporation. In addition, it assumed liability of teaching $52,000.00 in untaught lessons and it cancelled judgment notes of the Wayne Corporation, guaranteed by Mrs. Wayne, totalling $10,000.00. All the parties were released from any obligation or liability under the March 10, 1965, agreement.

On December 8, 1965, Mrs. Herbert Moro, and the guardian *ad litem* of Mrs. Wayne's children met with Judge Dunne of the Probate Division of the Circuit Court in chambers for about one hour to explain the terms of the December 1, 1965, agreement. On December 23, 1965, a petition incorporating the terms of this agreement was presented to Judge Dunne for his approval. This petition was prepared and presented by James Brandvik, the attorney for the estate, because Mrs. Herbert did not want to file an appearance and become an attorney of record for the estate. After a hearing, Judge Dunne entered an order approving the agreement.

Over fifteen months later, on March 27, 1967, Mrs. Wayne, as Executrix of the Estate, filed a petition under Section 72 of the Civil Practice Act to vacate the order approving the sale. The petition alleged that her assent to the December 1, 1965, contract, and her assent to the petition seeking its approval were procured as the result of fraud, duress, undue influence, and breaches of fiduciary duties. After an evidentiary hearing, the petition was denied.

■■ Section 72 of the Civil Practice Act provides a simple method whereby a party may bring out before a court rendering an order or judgment matters of fact, not appearing of record, which if known to the court at the time the order or judgment was entered would have prevented its rendition. (*Brockmeyer v. Duncan,* 18 Ill.2d 502, 165 N.E.2d 294.) To be entitled to relief under Section 72, however, a party must plead and prove facts sufficient to justify relief. (*Esczuk v. Chicago Tran-*

*sit Authority,* 39 Ill.2d 464, 236 N.E.2d 719.) Where a petition and answer thereto raise material issues of fact, the trial court must conduct an evidentiary hearing to resolve the factual issues raised by the pleadings. (*Wilson v. Wilson,* 56 Ill.App.2d 187, 205 N.E.2d 636), and after the trial court has heard evidence and made findings, a reviewing court will not disturb those findings unless they are against the manifest weight of the evidence. See *Abron v. Public Pontiac, Inc.,* 64 Ill.App.2d 73, 212 N.E.2d 326, *Year Investments, Inc. v. Joyce,* 62 Ill.App.2d 173, 210 N.E. 2d 67.

In the present case, Dorance took immediate possession of the assets of the Wayne Corporation upon the approval of the sale, and commenced to operate the business. Mrs. Wayne did not file her petition to vacate until fifteen months had elapsed from the time that the order approving the sale was entered. The record contains no satisfactory explanation for this delay, and there is no indication that the delay was occasioned by the respondents, their attorney, or Mrs. Herbert.

Mrs. Wayne testified at the hearing on the Section 72 petition that she signed the December 1, 1965, agreement and the petition for the agreement's approval because Rance, Moro, and Mrs. Herbert, all threatened that she would go to jail, lose custody of her children, and lose everything if she did not sign. She said she never obtained a copy of the December 1, 1965, agreement, until December 23, 1965, and she believed that the agreement related solely to the sale of the Loop Studio. She was upset and overwrought at the time and was under the care of a physician. No medical testimony, however, was introduced relating to her physical or mental condition.

Valerie Callies, Mrs. Wayne's married daughter, testified that her mother had been distraught and upset for a period of time. In addition, she testified that she had discussed the problems of the estate with Mrs. Herbert who urged her to contest the provisions of the Will. Helen Martos, a long time employee of the Wayne Corporation, testified that Mrs. Wayne was in a state of shock, confused, forgetful, nervous and agitated, in the latter part of 1965.

Arthur Wolfson, who had been the manager of the Loop Studio in 1965, testified that Rance, Moro, and Mrs. Herbert had all threatened Mrs. Wayne in his presence. He had been present during at least five meetings in December, 1965, concerning the sale, but he was denied an opportunity to read the December 1, 1965, agreement before Mrs. Wayne signed it. He advised Mrs. Wayne against the agreement, but she did not heed his advice. In December of 1965, Mrs. Wayne appeared to him as upset, overwrought, scared and foggy.

James Brandvik, the attorney for the estate, testified that sometime

in the fall of 1965, he was informed by Mrs. Wayne that Mrs. Herbert was acting as her attorney. Prior to this time his associate, Mr. Berkos, had unsuccessfully attempted to negotiate a sale of the Loop Studio. He drafted the petition which he presented on December 23, 1965. Before drafting it, he said he went over the December 1, 1965, agreement, with Mrs. Wayne "so that it was explained what was happening."

Mrs. Herbert testified that she never threatened Mrs. Wayne. On December 1, 1965, she gave Mrs. Wayne the original of the agreement after explaining its terms for two and one-half hours. Mrs. Wayne stated to her at that time, "I don't know how you were able to do it. It was terrific for me, it was terrific." On December 8, 1965, she discussed the provisions of the agreement fully with Judge Dunne in chambers. She was in court on December 23, 1965, when the petition was presented to Judge Dunne; and she heard Mrs. Wayne state in response to a question from the bench that she consented to the agreement.

It is claimed that a fiduciary relationship existed between Dorance's attorney, Gerald Moro, and the Wayne Corporation which was abused by Moro in negotiating the sale of the assets of the corporation. The record indicates that Moro was retained in April of 1965, to represent the Wayne Corporation in a suit which was settled in May of 1965 (months before the negotiations involved herein) and in addition that as a result of the December 1, 1965, agreement, he again represented the Wayne Corporation in a suit after the negotiations were concluded. It is clear from the record, however, that Moro acted openly in behalf of Dorance and in opposition to Mrs. Wayne's interests. It was he who sent the notice of termination to the Wayne Corporation on October 29, 1965, on behalf of Dorance. The fact that Mrs. Wayne shortly thereafter secured the services of Mrs. Herbert, indicates that she realized that Moro was not acting on her behalf. The course of dealing of the parties subsequent to October, 1965, established conclusively that no fiduciary relationship existed between Moro and Mrs. Wayne with regard to the sale and that Mrs. Wayne knew this fact.

It is also urged that Mrs. Herbert breached a fiduciary duty by inducing Mrs. Wayne to assent to the sale. We have carefully examined the record and find no merit to this contention. Mrs. Wayne was confronted by a number of significant legal problems at the time when she secured Mrs. Herbert's services. The Wayne Corporation was in a serious financial crisis. It had received a notice from Dorance of termination of its right to operate as a Fred Astaire Dance Studio. The rent for the Loop Studio had not been paid. It had issued a number of checks which had not been paid because of an insufficiency of funds in its checking account, including checks to the Internal Revenue Service for employee withhold-

ing taxes. The March 10, 1965, agreement, had not been approved by the Probate Division of the Circuit Court, and $7,200.00 obtained under that agreement had not been inventoried or deposited in the estate. In addition, Robert Wayne's Will, under which she was named as the sole beneficiary, devisee, and legatee of the estate, contained no provision for two children born after its execution.

Mrs. Wayne obtained Mrs. Herbert's services on the advice of a family friend after she had been unsuccessful in her attempts to sell the Loop Studio. She was present at a number of negotiating sessions, including the five hour, November 23, 1965 meeting, at which the tentative agreement was reached. The terms of the December 1, 1965, agreement, were explained to her both by Mrs. Herbert and by Mr. Brandvik. She was in court with her children when the petition seeking approval of the sale was presented, but she expressed no dissatisfaction with the agreement at that time. It was not until fifteen months later that she filed her petition to vacate.

Mrs. Wayne testified that both Moro and Mrs. Herbert told her that unless she assented to the sale she would go to jail and would lose custody of her children. The trial judge stated during the course of the trial that this position was unbelievable and we agree. The question of whether Mrs. Wayne's assent to the December 1, 1965, agreement was procured as a result of fraud, duress, undue influence, or breaches of fiduciary duties is essentially one of fact. The testimony on this issue was conflicting. We will not substitute our judgment for that of the trier of fact who saw and heard the witnesses because it is the function of the trier of facts and not of a reviewing court to weigh and evaluate the evidence. The trier of fact found that Mrs. Wayne did not prove the allegations of her petition, and there is ample evidence in the record to support that finding.

We have reviewed the cases cited by Mrs. Wayne in support of this appeal and find that none of them is directly on point with the facts of this case. In view of our conclusions we find it unnecessary to consider other questions which have been presented to us.

For the reasons stated, the order of the Probate Division of the Circuit Court is affirmed.

Order affirmed.

ADESKO, P. J., and DIERINGER, J., concur.