Manny Cab Company et al., Plaintiffs-Appellants, v. McNeil Teaming Company et al., Defendants-Appellees.

(No. 58506;

First District (2nd Division)—May 20, 1975.

Sherman Dickholtz, of Chicago, for appellants.

Schaffenegger & Watson, of Chicago (Donald G. Peterson, of counsel), for appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs, Manny Cab Company and Dave Silverman, appeal from an order of the circuit court which granted defendants' petition, pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 72), to vacate a default judgment, and denied plaintiffs' motion to strike the same. The rather unusual facts which give rise to this appeal, so far as can be discerned from the record presented, are as follows:

On October 12, 1970, a complaint was filed by plaintiffs seeking recovery for injuries sustained as a result of a vehicular collision on October 22, 1968, at Ohio and Halsted streets in Chicago, Illinois. Summons was served on defendant McNeil Teaming Company on March 26, 1971, and on defendant Benjamin Manuel on April 10, 1971. Sometime thereafter the court file for the case could not be found. In November of 1971, defendants informed plaintiffs that they would appear before Judge Hermes and move the court to vacate any and all defaults,[1] and would move for leave to file an appearance, answer and jury demand. On January 14, 1972, defendants' motion was granted *ex parte* and on January 25, 1972, defendants filed their appearance, answer, jury demand, interrogatories to be answered by plaintiff Silverman, and notice of deposition of plaintiff Silverman. On the same day, the case came up on Judge Charles Horan's nonjury trial call and was assigned to Judge Emanuel Rissman for trial. Defendants did not appear and Judge Rissman entered judgments, dated January 25, 1972, in favor of plaintiffs for the sum of $4,352.62. At this point, apparently, the original court file reappears and the original half sheet reflects the entry of judgments against the defendants, but does not reflect the order of Judge Hermes entered on January 14, 1972. Judge Hermes' order appears on a duplicate half sheet which had been prepared because the original court file was thought to be lost. The duplicate half sheet, on the other hand, contains no memorandum of judgments.

---

[1] At the time the motion was heard, no default orders had been entered. Apparently, this was a precautionary measure taken as a result of the lost court file.

On February 1, 1972, after the default judgments had been entered, and the time at which plaintiff Silverman's deposition was to be taken, the secretary of Attorney Dickholtz advised defendants' attorney that the deposition could not proceed. On April 6, 1972, after notice had been given to plaintiffs, Judge Hermes entered an order that plaintiff Silverman appear for deposition on June 8, 1972. Later that month, defendants also filed their answers to plaintiffs' interrogatories.

On May 4, 1972, plaintiffs filed garnishment affidavits against Sears Bank and Trust Co., naming defendants as the judgment debtors. Thereafter, on May 19, 1972, defendants filed an emergency petition praying for relief under section 72 of the Civil Practice Act. In their petition defendants sought to vacate the judgments entered against them on January 25, 1972. In support of the petition, the affidavit of James B. Sparrow was submitted. Affiant stated that he was the attorney charged with the handling and preparation of the subject case; that by previous order of Judge Hermes, defendants were given leave to, and did in fact, file their appearance, answer and jury demand; that he had no knowledge that the case had appeared on Judge Horan's trial call until May 18, 1972; that on that date, he had learned that defendant McNeil Teaming Company received a notice from the Secretary of State that its licenses were to be suspended on May 22, 1972, because an unsatisfied judgment had been entered against it on January 25, 1972. The affidavit further averred a meritorious defense and due diligence in the presentation of the petition. The trial court denied the petition for improper service inasmuch as defendants had sent notice of the petition not to plaintiffs personally, but to plaintiff's attorney. At this hearing, the attorney for plaintiffs, Sherman Dickholtz, refused to divulge the address of judgment creditor Silverman for the purpose of service upon him. Defense counsel diligently attempted to ascertain Silverman's address but was unsuccessful.

On May 23, 1972, defendants filed a motion to be heard on May 25, 1972, requesting an order that Attorney Dickholtz produce the address of Silverman, that all execution, garnishment, and all action with respect to the Office of the Secretary of State against defendants be enjoined, and that defendants be given leave to file an amended section 72 petition. On May 25, 1972, the hearing on the motion was continued to May 26, 1972. On that date, there apparently was a verbal agreement that nothing further would be done in execution of the judgments. Because of the court's other business, the hearing on the motion was again continued to May 30, 1972. Yet, on the afternoon of May 26, 1972, officers from the Secretary of State's office arrived at defendant McNeil Teaming Company's place of business and began removing license plates from defendant's trucks.

On May 30, 1972, defendants were given leave to file the amended section 72 petition, a stay of execution was ordered, and the matter was continued to June 7, 1972. On that date, the court entered an order enjoining the Secretary of State from further proceedings with respect to suspension of the license, registration certificates and license plates of the defendants.

At a hearing on June 8, 1972, Attorney Dickholtz presented satisfactions of judgment in the subject case which were executed on June 2, 1972. The record does not indicate who paid the judgments, but during oral argument in this court, Attorney Dickholtz stated that they were not paid by defendant McNeil Teaming Company, but by Leaseway Corporation, a company apparently affiliated therewith. The payment was negotiated by Attorney Dickholtz without defense counsel's knowledge, and apparently, the payment was prompted by the fact that without its vehicular license plates, defendant McNeil Teaming Company could not carry on its business. The trial judge treated the satisfactions of judgment as nullities because Attorney Dickholtz had violated his earlier order that all matters of execution be held in abeyance, ordered that Attorney Dickholtz disclose plaintiff Silverman's address, and further ordered that plaintiffs stop and desist from further execution.

Defendants' amended section 72 petition alleged that they had a good and meritorious defense in that the eastbound vehicle of defendant was stopped at the intersection of Halsted and Ohio streets when the plaintiff, travelling at an excessive rate of speed and without a proper lookout southbound on Halsted street, struck defendants' vehicle. It further averred the above procedural events which occurred both subsequent and antecedent to the entry of the January 25, 1972, judgment, and based on those events, alleged that plaintiffs were engaged in a conscious course of misrepresentation and unfair dealing and that defendants exercised due diligence.

Plaintiffs moved to strike the petition on the grounds that due diligence was not demonstrated, that facts were not stated which constituted a meritorious defense, and that the affidavits attached to the petition were "incompetent." On October 20, 1972, the trial court denied plaintiffs' motion to strike, granted defendants' section 72 petition, and ordered plaintiffs to file a bond in the amount of $4,200.

Plaintiffs' initial contention is that the trial court abused its discretion in granting defendants' amended section 72 petition since it failed to explain defendants' lack of diligence from the time summons was served until the entry of judgment on January 25, 1972. We disagree.

██ It is well settled that a section 72 petition is subject to the same rules of pleading as any other action (*Brockmeyer v. Duncan*, 18 Ill.2d

502, 165 N.E.2d 294), and must, therefore, state adequate grounds for relief and petitioners' entitlement thereto. (*Mutual National Bank v. Kedzierski,* 92 Ill.App.2d 456, 236 N.E.2d 336.) It is further recognized that a litigant has the duty and obligation to follow the progress of its case (*Johnson v. Hawkins,* 4 Ill.App.3d 29, 280 N.E.2d 291) and that generally relief under section 72 is granted only after a showing of due diligence. (*Danforth v. Checker Taxi Co.,* 114 Ill.App.2d 471, 253 N.E.2d 114.) However, the question of due diligence need not be viewed in a vacuum. For the sufficiency of a petition to set aside a default judgment under section 72 addresses itself to the equitable powers of the court, and where, in the interest of justice and fairness, a default judgment has been entered under unfair, unjust, or unconscionable circumstances, that judgment will be vacated. (*Ellman v. De Ruiter,* 412 Ill. 285, 106 N.E.2d 350; *Elfman v. Evanston Bus Co.,* 27 Ill.2d 609, 190 N.E.2d 348.) Under these circumstances, justice and good conscience may require that a judgment be vacated even though there may be a lack of due diligence. (*George F. Mueller & Sons, Inc. v. Ostrowski,* 19 Ill.App.3d 973, 313 N.E. 2d 684, *leave to appeal denied,* 56 Ill.2d 586.) In this regard, it is important to note all the circumstances of the proceedings (*Marks v. Gordon Burke Steel Co.,* 14 Ill.App.3d 191, 301 N.E.2d 835), including the conduct of the parties and of counsel. (*George F. Mueller & Sons, Inc. v. Ostrowski; Hall v. Hall,* 15 Ill.App.3d 599, 304 N.E.2d 763.) When the decision of the trial court is based upon these equitable considerations, a court of review is not disposed to overturn it unless an abuse of discretion is clearly demonstrated. *Public Taxi Service, Inc. v. Ayrton,* 15 Ill.App.3d 706, 304 N.E.2d 733.

■■ From the circumstances attending the present case, both before and after the rendition of judgment, the record reveals not an abuse of discretion by the trial court, but rather demonstrates the unfair conduct of plaintiffs' attorney which clearly warranted the equitable relief sought. Plaintiffs were given notice that defendants would move to vacate any and all judgments, and request leave to file an appearance, answer and jury demand. The reason given for defendants' failure to act until November of 1971, was that they were unable to verify service due to the missing court file. While this explanation certainly is not satisfactory in itself, it is a matter which may be taken into consideration by the trial court. *Kacinski v. Giles,* 10 Ill.App.3d 566, 294 N.E.2d 704.

Having notice that defendants desired to contest the lawsuit, plaintiffs proceeded to answer Judge Horan's nonjury call on January 4, 1972, and continued the matter to January 25, 1972. Although the court file was still "short" at this time, plaintiffs did not advise defendants of the January 4 continuance. Additionally, plaintiffs did not appear at the January 14

hearing before Judge Hermes at which defendants were given leave to file their appearance, answer and jury demand within 28 days. Had this fact been brought to the attention of Judge Rissman, the default judgments would not have been entered. However, on January 25, 1972, Judge Rissman entered a default judgment against defendants without knowledge of Judge Hermes previous order. At this hearing, the original court file reappears and the half sheet does not reflect the proceedings before Judge Hermes. Speculation as to the inexplicable disappearance of the court file and its propitious reappearance is neither warranted nor necessary in this appeal.

■■ It is, however, particularly noteworthy that counsel for plaintiffs never advised opposing counsel, informally or otherwise, that he was proceeding to an *ex parte* judgment. As we stated in *George F. Mueller & Sons, Inc. v. Ostrowski*: "A lawyer's professional responsibility to his client does not require him to disregard professional courtesies to opposing counsel, including * * * adherence to local customary practices designed to assure the doing of substantial justice between the parties * * *." (19 Ill.App.3d 973, 979.) Here, had Attorney Dickholtz followed the customary practice of telephoning opposing counsel of the intended *ex parte* proceeding, the bizarre situation presented—in which one case had two different court files and was being heard on two different stages by two different judges—would have been prevented. These prejudgment occurrences were not improperly considered by the trial court in the exercise of its equitable powers. Fair play required as much.

■■ Equally disturbing are the events which transpired subsequent to the entry of judgment. Defendants were not notified of the entry of judgment, nor did they know of its existence until garnishment proceedings had been initiated some 100 days later. It has been repeatedly stated that service of an execution more than 30 days after rendition of a judgment casts a "cloud" upon the proceedings which a court may consider when determining the sufficiency of a section 72 petition. (*George F. Mueller & Sons, Inc. v. Ostrowski; Hall v. Hall; Stehman v. Reichhold Chemicals, Inc.*, 57 Ill.App.2d 40, 206 N.E.2d 299.) This consideration takes on greater importance when plaintiffs' counsel engages in conduct which gives rise to the reasonable belief that the case is still pending. (*Martin v. Kargman*, 133 Ill.App.2d 545, 273 N.E.2d 677.) In *Ellman v. De Ruiter*, the court stated:

> "While there was no duty on the attorney to notify defendant of the default judgments, fair dealing would require that he inform defendant of the defaults when the question arose instead of pursuing a course calculated to keep the defendant in ignorance

until the time he could make a direct attack on the judgments had expired." (412 Ill. 285, 293.)

Attorney Dickholtz knew that plaintiff Silverman's deposition was to be taken on February 1, 1972. On that date, rather than informing defendants of the default judgments, counsel chose to advise defendants that the deposition could not proceed. Furthermore, on April 6, 1972, after notice had been given to plaintiffs, Judge Hermes entered an order that plaintiff Silverman appear for deposition on June 8, 1972. Later that month, defendants also filed their answers to plaintiffs' interrogatories. From these facts, we think it clear that Attorney Dickholtz knew that defendants were laboring under the impression that the case was still pending, and that his conduct was designed to mislead and lull defendants into a furtherance thereof.

■■ Counsel's peculiar conduct was further asserted when he refused to proffer the address of plaintiff Silverman so that defendants might serve him notice of the section 72 petition. Dickholtz remained adamant in his refusal, while at the same time, he attempted to negotiate the judgments on behalf of his clients. As in *Public Taxi Service, Inc. v. Ayrton*, the totality of circumstances in the case at bar cry out for equitable relief; likewise, the language of the *Public Taxi Service* opinion, in describing the course of conduct pursued by Attorney Dickholtz in that case, is particularly revealing and applicable here:

> "[T]he obvious attempt to conceal the judgments by not replying to letters concerning the case, the failure to take out execution within 30 days after the judgments, the more than three months delay in starting garnishment, and the attempt to frustrate the defendant's petition for redress by refusing to divulge Taylor's [the judgment creditor] whereabouts, demonstrated the unfair conduct of the plaintiffs and their attorney and the unconscionable advantage taken of the defendant. Justice and fair play called for the exercise of the trial court's equitable powers." (15 Ill.App.3d 706, 710.)

Finally, responding to the various other contentions raised by plaintiffs, we deem it sufficient to state that: (1) the denial of the original section 72 petition on the grounds of improper notice was not res judicata as to the amended section 72 petition; (2) the filing of the satisfaction of judgment in consideration of the alleged voluntary payment by a third party did not render the case moot; and (3) the affidavit filed in conjunction with the petition sufficiently set forth ultimate facts constituting a meritorious defense.

For the reasons stated, the trial court properly granted defendants'

section 72 petition. The judgment of the circuit court is affirmed and the case is remanded for further proceedings in accordance with the trial court's order of October 20, 1972.

Judgment affirmed and remanded for further proceedings.

DOWNING, P. J., and LEIGHTON, J., concur.