AMERICAN RESERVE CORPORATION, Plaintiff, *v.* ROBERT L. HOLLAND *et al.*, Defendants and Counterplaintiffs-Appellants.—(ALLEN SCHOENEMAN, d/b/a Allen Schoeneman and Co., Defendant-Appellee.)

First District (2nd Division)  No. 79-542

Opinion filed January 23, 1980.

Robert K. Mayer, of Chicago, for appellants.

Charles G. Levy, of Chicago, for appellee.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

This is an appeal from an order entered by the circuit court of Cook County vacating a default judgment. An appeal is also taken from the same order which dismissed the counterclaims upon which the default judgment had been entered. The dispositive issue presented for review is whether the trial court abused its discretion when it entered an order vacating the default judgment.

For reasons hereinafter set forth, we reverse.

On May 25, 1973, American Reserve Corporation (hereinafter referred to as American Reserve), an insurance company, issued a homeowners policy insuring the home of Robert and Flora Holland.[1] On January 1, 1974, a fire occurred at the Holland residence. The following day, as the Hollands were attempting to salvage some of their personal possessions, Lee Sandor, who identified himself as an agent for Allen Schoeneman, approached them. Sandor informed the Hollands that certain "board up" services were required by law, and that it was therefore necessary for them to sign a document for such services. The document purportedly authorized Schoeneman to "adjust" the insurance claim (for the fire loss) with the insurance company for a 10 percent fee.[2] Sandor also represented to the Hollands that as a result of Schoeneman's services they would recover more money from the insurance company.

On September 16, 1973, American Reserve issued a homeowners policy insuring the home of Daisy Scott and Celestine Cook, mother and daughter.[3] On March 3, 1974, a fire occurred at the Scott-Cook residence. As Scott and Cook stood outside their home watching the fire department attempt to extinguish the fire, an agent for Schoeneman approached them.[4] The agent informed Scott and Cook that certain "board up" services were required by law and that it was therefore necessary for them to sign a document for such services. This document, like the document signed by the Hollands, purportedly authorized Schoeneman

---

[1] The Holland home was insured for $10,000 for a term of one year.

[2] The pleadings do not disclose with certainty whether Sandor fully disclosed the terms of the document to the Hollands.

[3] The Scott-Cook home was insured for $15,500 for a term of one year.

[4] The pleadings do not indicate the identity of this purported agent.

to "adjust" the insurance claim (for the fire loss) with the insurance company for a 10 percent fee. Scott signed the document without having been informed by the agent that the document authorized Schoeneman to "adjust" the insurance claim.

Schoeneman's occupation as a "public fire adjuster" consists in part of soliciting homeowners of fire damaged property to subscribe to his "services."[5] The services he purports to perform consist of the representation of homeowners who are claimants under their homeowners insurance policies. Schoeneman assesses a 10 percent contingency fee for these services which include the appraisal of losses, the examination of insurance policies to ascertain the terms and coverage thereof, and other matters pertinent to the "adjusting" of claims.

Pursuant to the documents signed by the Hollands and by Scott, Schoeneman purportedly performed the above described services and claimed a 10-percent interest in each of the insurance policy proceeds.[6] However, in each instance the mortgage company had secured liens in excess of 90% of the insurance proceeds. It appears that Schoeneman contended that he was entitled to his fee regardless of the secured liens of the mortgage company. As a result of these conflicting claims by Schoeneman and the mortgage company, Schoeneman refused to endorse the insurance proceeds drafts and the funds remained undistributed.

On February 22, 1977, American Reserve filed two complaints for interpleader, one concerning the insurance proceeds under the Hollands' policy and the other concerning the insurance proceeds under the Scott-Cook policy. These cases were consolidated on August 30, 1977. On September 6, 1977, Scott and Cook filed a counterclaim against Schoeneman. On October 7, 1977, the Hollands also filed a counterclaim against Schoeneman. Schoeneman filed no answer or other responsive pleadings within the time allowed by law, and on November 10, 1977, the Hollands, Scott and Cook (hereinafter referred to as the homeowners) filed a motion for a default judgment. On November 21, 1977, the trial court granted Schoeneman 10 days within which to file his responsive pleadings. No such pleadings were filed, and on December 19, 1977, pursuant to notice, a judgment of default was entered against Schoeneman for failure to answer or otherwise plead.[7]

---

[5] Schoeneman employs agents to travel to the scenes of fires.

[6] The proceeds from the Hollands' policy were $10,000. The proceeds from the Scott-Cook policy were $14,995.

[7] On October 25, 1977, the homeowners filed written interrogatories propounded to Schoeneman. On December 19, 1977, the trial court granted Schoeneman seven days within which to answer the interrogatories. On January 3, 1978, in response to the homeowners' motion to compel answers to the interrogatories, the trial court granted Schoeneman three

On January 23, 1978, Schoeneman moved to vacate the default judgment entered December 19, 1977. The homeowners opposed Schoeneman's motion and filed a memorandum in support of their position. On February 1, 1978, the trial court granted Schoeneman's motion to vacate the default judgment and further granted him leave to file his motion to strike and dismiss the counterclaims of the homeowners.[8] On May 15, 1978, the trial court denied Schoeneman's motion to strike and dismiss the counterclaims of the homeowners and granted Schoeneman 14 days within which to answer or otherwise plead to the counterclaims.

On August 8, 1978, Schoeneman still had not filed an answer or other responsive pleading, and the homeowners filed a second motion for default judgment with a memorandum in support thereof. Schoeneman requested and was granted 14 days to respond to the motion. The matter was set for a hearing on August 24, 1978. Schoeneman filed no response to the motion for default judgment and failed to appear on August 24, 1978. On August 24, 1978, the trial court adjudged Schoeneman to be in default for "failure to plead" and ordered that the "proveup on damages" be scheduled for August 30, 1978. This matter was continued until October 12, 1978, at which time the trial court entered judgments in the amount of $4,723.52 for Scott and Cook, and $7,361.07 for the Hollands.[9]

On November 28, 1978, Schoeneman's attorney received from the homeowners' attorney a copy of the default judgment. The envelope was postmarked November 24, 1978, and the accompanying letter dated November 21, 1978. The letter stated in part:

> "Over five weeks have past since Judge Berg entered the judgment order against your client, Allen Schoeneman. * * * A copy of that order is enclosed."

On January 12, 1979, Schoeneman filed a motion to substitute attorneys and a petition to vacate the default judgment entered October 12, 1978. The homeowners did not file a response. On February 6, 1979, the trial court granted Schoeneman's motion to vacate the default judgment and dismissed, on the merits, the counterclaims of the homeowners.[10]

---

days within which to answer the interrogatories. Schoeneman filed the answers on January 10, 1978.

The default order was hand-delivered to Schoeneman's attorney on December 19, 1977, and acknowledged by him.

[8] The record does not include the motion to vacate nor the motion to strike and dismiss the counterclaims of the homeowners.

[9] The record does not indicate whether Schoeneman received notice of this proceeding. Schoeneman does not argue in his brief that he did not receive notice.

[10] The record does not indicate that a motion to dismiss the counterclaims was pending at this time.

The homeowners first contend that the trial court erred in granting Schoeneman's petition to vacate the default judgment entered by the trial court on October 12, 1977. Schoeneman argues that the trial court did not abuse its discretion when it granted his petition to vacate such default judgment.

Section 72 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 72) provides a procedure for obtaining relief from final orders, judgments and decrees after the passing of 30 days from the date of the entry thereof. A motion to vacate a default judgment pursuant to section 72 is addressed to the equitable powers of the court which entertains the petition. (*Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 190 N.E.2d 348; *Lammert v. Lammert Industries, Inc.* (1977), 46 Ill. App. 3d 667, 360 N.E.2d 1355.) Whether the petition should be granted lies within the sound discretion of the court and depends upon the facts and equities presented. (*Chase v. Cummingham* (1978), 64 Ill. App. 3d 54, 56, 381 N.E.2d 27; *Lammert*, at 673; *Goldman v. Checker Taxi Co.* (1967), 84 Ill. App. 2d 318, 320, 228 N.E.2d 177.) This court is justified in disturbing the judgment of the trial court only when it finds that the discretion vested in the trial court has been abused. *Chase*, at 56; *Lammert*, at 673; *George F. Mueller & Sons, Inc. v. Ostrowski* (1974), 19 Ill. App. 3d 973, 977, 313 N.E.2d 684.

■■ ■ To warrant relief under section 72, a party must plead and prove facts sufficient to justify relief. (*Lammert*, at 673; *In re Estate of Wayne* (1971), 133 Ill. App. 2d 565, 273 N.E.2d 720.) The quantum of proof necessary to sustain a section 72 petition is a preponderance of the evidence. (*Lammert*, at 673; *McKinnon v. Yellow Cab Co.* (1975), 31 Ill. App. 3d 316, 317, 333 N.E.2d 659.) When seeking relief from a default judgment, the petition must affirmatively set forth facts showing both the existence of a meritorious defense and the exercise of due diligence on the part of the petitioner in presenting the defense to the lawsuit as well as presenting the section 72 petition. (*Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 236 N.E.2d 719; *Lammert*, at 673.) It is essential that both elements, meritorious defense and due diligence, be shown since the purpose of a section 72 proceeding is to bring facts not appearing of record to the attention of the trial court which, if known to the court at the time the judgment was entered, would have prevented its rendition. (*Lammert*, at 673-74; *Akers v. Christen* (1973), 11 Ill. App. 3d 369, 296 N.E.2d 774.) Accordingly, the petitioner must show that his failure to defend was the result of an excusable mistake and that he acted reasonably, and not negligently, when he failed to initially resist the judgment. (*Chase*, at 56; *Lammert*, at 674; *Hogan & Farwell, Inc. v. Meitz* (1976), 45 Ill. App. 3d 216, 220-21, 359 N.E.2d 740.) In showing that his failure to defend against the lawsuit was the result of an excusable

mistake, a section 72 petitioner is generally bound by the negligence of his legal counsel which resulted in the entry of the default judgment. *Lammert,* at 674.

■■■ In the case at bar the record on appeal does not include a report of proceedings of the hearing on the section 72 petition. In that event we must look to Schoeneman's petition and its supporting affidavit to determine whether facts showing a meritorious defense and due diligence of Schoeneman were alleged. We note that the judge who entered the default judgment also considered the section 72 petition. Since, as set forth above, one purpose of a section 72 petition is to bring before the court matters of fact which if known to the court at the time judgment was entered would have prevented the entry of the default judgment, the judge who entered the initial judgment was in the best position to assess the impact of the defense advanced in the petition. (*Lammert,* at 674.) Schoeneman's petition alleges:

> "That the Counter-Defendant, ALLEN SCHOENEMAN, entered into a contract with the Counter-Plaintiffs as their adjuster and expended money and services for and in behalf of adjusting their fire loss and protection of their fire loss and protection of their properties (See Exhibits 'E' and 'F' made a part hereof), and at all times represented them with diligence."[11]

We agree with the trial court's ruling that the above allegations were sufficient to state a meritorious defense. In *Chase* the section 72 petitioner stated as follows:

> "Ralph Burgholzer has a meritorious defense to the complaint in that the accident which occurred on October 20, 1972, was caused by plaintiff's car backing into the car driven by Ralph Burgholzer." (*Chase,* at 58.)

The *Chase* court found that this language fulfilled the meritorious defense requirement. See *Lammert.*

■■■ However, contrary to the ruling of the trial court, we conclude that the petition fails to allege facts showing the exercise of due diligence on the part of Schoeneman in both defending the cause and filing the petition. Section 72 does not afford a litigant a remedy whereby he may be relieved of the consequences of his own mistakes or the negligence of his trial counsel (*Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 165 N.E.2d 294; *Lammert,* at 674), and it is the duty of every litigant to follow the progress of his case rather than to merely assume that his counsel is doing everything which is necessary and proper in the conduct thereof. (*Chase,* at 58; *Manny Cab Co. v. McNeil Teaming Co.* (1975), 28 Ill. App. 3d 1014,

---

[11] Exhibits E and F are the purported contracts between Schoeneman and the homeowners and invoices for the "board up" services.

329 N.E.2d 376; *Stewart v. Beegun* (1970), 126 Ill. App. 2d 129, 261 N.E.2d 495.) The court may consider the circumstances preceding the default judgment as well as the conduct of the parties after the judgment is entered. *Lammert*, at 674; *Ulrich v. Glyptis* (1967), 79 Ill. App. 2d 447, 224 N.E.2d 581.

In the instant case Schoeneman relies upon the following allegations contained in his petition to establish the requisite showing of due diligence: that having been advised of the default judgment, Schoeneman retained new counsel, Schlegel and Trafelet, Ltd., to investigate this matter and to take appropriate action which resulted in the filing of the section 72 petition; that the homeowners' attorney failed to inform Schoeneman's then counsel of record, Charles G. Levy, of the order of default entered on August 24, 1978, or of the default judgments entered October 12, 1978, until November 28, 1978; and that Levy's office advised the homeowners' attorney's office that Levy was ill on August 24, 1978, and unable to appear in court.

When the circumstances of this case are viewed in their entirety, we conclude that Schoeneman has failed to allege facts which, if true, would entitle him to the relief requested. The trial court could well have concluded, if it did so conclude, that Levy's illness constituted a reasonable excuse for his failure to appear at the scheduled hearing on August 24, 1978. However, the default order specified "failure to plead," not failure to appear, as the grounds for the order. Conspicuously absent from Schoeneman's petition are allegations tending to show due diligence of Levy. Since parties are generally bound by the negligence of their counsel, this omission in the petition is noteworthy. Indeed no explanation was offered in the petition as to why Schoeneman never filed an answer or other responsive pleading between May 15, 1978, and August 24, 1978; nor was an excuse advanced for Schoeneman's failure to respond, as he had requested 14 days within which to do so, to the motion for default judgment. Significantly, the petition also fails to allege that Schoeneman and his counsel were without notice or knowledge of either the hearing date or the homeowners' intention to seek a default judgment. On the face of both the petition and the record no facts are presented which tend to establish due diligence by Levy; to the contrary, the record affirmatively suggests his lack of diligence.

■ It has been reasoned that service of execution more than 30 days after the rendition of a default judgment casts a "cloud" on the proceedings which a court may consider when determining the sufficiency of a section 72 petition. (*Ellman v. DeRuiter* (1952), 412 Ill. 285, 106 N.E.2d 350.) While fair dealing may arguably require the homeowners' attorney to notify Schoeneman of the default judgment, there is no legal duty to do

so. Service of execution or notification of the default judgment more than 30 days after the rendition of the default judgment does not itself warrant that the default judgment be set aside. (*Lammert*, at 676.) In *Lammert* the plaintiff did not see fit to execute on the default judgment until 4½ months after its rendition, yet the appellate court reversed the trial court's order which vacated the default judgment because defendants failed to act diligently. In the case at bar over two months transpired between Schoeneman's notification of the default judgment and his filing of the section 72 petition.

We are aware of decisions holding that justice and good conscience may require that a default judgment be set aside to allow a defendant a day in court even though there has been a lack of diligence on his part (*e.g., George F. Mueller & Sons*). It has been noted that in light of the voluminous litigation in Cook County, default judgments frequently occur, and therefore section 72 should be liberally applied to afford relief in such instances. (*Park Avenue Lumber & Supply Co. v. Nils A. Hofverberg, Inc.* (1966), 76 Ill. App. 2d 334, 222 N.E.2d 49.) "But the ambit of section 72 relief must not be overbroadened to such an extent that principles of equity and an ordered concept of justice are diluted." (*Lammert*, at 676-77.) Based upon all the facts established in the case at bar, we conclude that Schoeneman did not establish any acceptable excuse for failure to exercise due diligence nor any grounds for the invocation of the court's equitable powers. For these reasons we reverse the judgment of the circuit court of Cook County. Because we so hold, it is unnecessary for us to consider the homeowners' contention that the trial court erred when it dismissed their counterclaims.

Reversed.

DOWNING and HARTMAN, JJ., concur.