BROWNING, EKTELON DIVISION, Petitioner-Appellee, v. DON WIL-
LIAMS, Respondent-Appellant.

First District (1st Division)    No. 1—92—0260

Opinion filed December 27, 1993.

Cassiday, Schade & Gloor, of Chicago (Timothy J. Ashe and Lynn D. Dowd, of counsel), for appellant.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Carson P. Veach and Douglas J. Bank, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

On December 17, 1991, the circuit court granted petitioner Browning Corporation's (Browning's) request pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1401) to vacate a $3.525 million damage award against it in favor of respondent, Don Williams.

The petition for relief stemmed from a petty collection case. Browning, via its collection agency United Mercantile Agencies

(UMA), had sued Williams, one of its sales representatives, in 1986 to collect $8,136.88 for materials that it contended Williams owed to it. Williams answered the complaint, denying that he owed Browning money; rather, Browning owed him $8,217.52 in commissions. In total, Williams filed 10 counterclaims against Browning requesting damages and attorney fees amounting to several hundred thousand dollars.

Browning initially enlisted Chicago attorney Leonard Abrams to represent its interest in the collection case. At the time, Abrams practiced with the law firm of Cooper & Cooper, Ltd., in Chicago. Abrams filed the complaint in the case. He also handled discovery matters in the case, at least through July 22, 1988. However, on August 1, 1987, Abrams left Cooper & Cooper. He started his own law practice and took Browning's case with him. He hired former Cooper & Cooper attorney Murray Westler to help him with his workload. Westler shared office space with Abrams, and Abrams delegated most of the work and responsibility for this case to Westler; however, Abrams never withdrew his name as lead counsel. In fact, at least until August 3, 1989, the pleadings filed by Westler were submitted on Abrams' stationery, with Abrams named as "counsel" in the case. However, after January 13, 1989, Williams sent notice and other pleadings in the case to Westler, rather than to Abrams.

On August 14, 1989, the trial court granted summary judgment in favor of Williams on count IX of his countercomplaint, which also resulted in judgment against Browning in its collection case. The trial court entered Rule 304(a) (134 Ill. 2d R. 304(a)) findings on this judgment. However, Westler never told Browning that it had lost its case. Rather, he reported that the motion for summary judgment was still pending. Westler apparently persisted in this course of dealing for the next year and a half, during which he continued to represent Browning's interest without Browning's knowledge as to precisely what was transpiring. Westler filed a timely notice of appeal from the August 14, 1989, decision; however, this court dismissed the appeal for want of prosecution on March 23, 1990.

Westler moved out of Abrams' office in November 1989. The trial proceedings on Williams' remaining counterclaims continued. Westler began missing numerous court dates, failed to comply with discovery orders, and generally handled the case very poorly. Apparently, his final court appearance in the case was on September 17, 1990. On this date, the trial court entered a rule to show cause why Browning should not be sanctioned for failing to comply with discovery requests. On October 28, 1990, Westler did not appear to answer the rule to show cause. Accordingly, the trial court entered judgment in favor of Williams on his remaining counterclaims.

On October 28, 1990, the trial court set the case for a trial on damages. The case was thereafter continued numerous times because of Westler's failure to appear in court. The trial judge entered a Rule 304(a) finding as to the October 28 judgment on January 23, 1991. No appeal was filed. Finally, on April 4, 1991, a trial on damages was held. Neither Westler nor anyone else appeared on behalf of Browning, despite the trial judge's and Williams' attorney's attempts to contact Westler. Williams presented expert testimony on damages, and the jury returned a $2.35 million damage award plus $1.175 million in attorney fees. Williams' attorney did not send notice of the judgment to Browning.

On May 13, 1991, more than 30 days after the judgment was entered, Browning "discovered" the judgment against it when Williams began garnishment proceedings. Browning retained new counsel at this time and on July 15, 1991, filed the section 2—1401 petition. On December 17, 1991, the trial court granted the petition "solely to the April 4, 1991 Judgment" and vacated the damage award. The trial court let stand the October 28, 1990, judgment on the counterclaims themselves. Williams appeals the trial court's decision to vacate the damage award.

At oral argument in this case, an issue arose regarding Browning's standing to file the section 2—1401 petition. Both parties filed supplemental argument regarding this issue. The underlying lawsuit was originally filed by "Browning, Ektelon Division," which, apparently, at the time, was "Ektelon Corporation," a California-based, wholly owned subsidiary of Browning. In 1988, according to Browning's appellate counsel, Ektelon was sold to Prince Manufacturing Company of New Jersey; however, after procuring his judgment against Ektelon, Williams sought to satisfy it against Browning at its principal place of business in Utah. Hence, the section 2—1401 petition was filed by Browning.

Initially, Browning urges that Williams has waived the standing issue because, as an affirmative defense, standing must be raised in the trial court. However, the waiver rule is a limitation on parties, not on this court. (*In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 279, 548 N.E.2d 731.) Therefore, because we raised the standing issue, we will address it. For this reason, we deny Williams' motion to strike the supplemental argument filed by Browning.

■ Requiring that a party have standing to sue "[e]nsure[s] that courts are deciding actual, specific controversies, and not abstract questions or moot issues." (*Rodriguez*, 131 Ill. 2d at 279-80.) In order for a party to have standing to file a section 2—1401 petition, it must either be privy to the record, injured by the judgment such that it

will derive benefit from its reversal, or competent to release the trial court's error. (*In re Estate of Reilly* (1979), 68 Ill. App. 3d 906, 386 N.E.2d 462.) In this case, Browning owned "Ektelon Division." Furthermore, when Williams sought to satisfy his judgment, he did so by citing the assets of Browning in Utah. Therefore, at the very least, Browning can satisfy the first two of the three criteria.

■ Williams contends, however, that Browning, as a foreign corporation, lacks standing because it does not have a certificate of authority to transact business in Illinois under the Business Corporation Act (Ill. Rev. Stat. 1991, ch. 32, par. 13.70). However, standing to sue cannot be denied to a foreign corporation when the basis of the lawsuit is a transaction involving interstate commerce. (*Textile Fabrics Corp. v. Roundtree* (1968), 39 Ill. 2d 122, 233 N.E.2d 376.) The record on appeal, together with the supplementary pleadings filed by the parties on appeal, reflect that this case involves transactions between a salesman who resided in Illinois and a California-based subsidiary of a Utah corporation. We cannot gainsay that the transactions involved interstate commerce, and, therefore, Browning had standing to file the section 2—1401 petition.

Pursuant to section 2—1401, the Code of Civil Procedure sets forth a simple petition process affording parties, when appropriate, "[r]elief from final orders and judgments, after 30 days from the entry thereof." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1401.) A section 2—1401 petition is addressed to the equitable powers of the trial court and allows a party to bring before the court matters unknown to both the parties and the court at the time of the judgment which would have precluded its entry. (*Manning v. Meier* (1983), 114 Ill. App. 3d 835, 449 N.E.2d 560.) A section 2—1401 petition is considered a new proceeding separate from the proceeding in which the judgment was rendered (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401(b)); therefore, like a complaint, the petitioner must allege and prove a right to the relief sought as in any other civil action. *Klein v. La Salle National Bank* (1993), 155 Ill. 2d 201, 205, 613 N.E.2d 737; *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 221, 499 N.E.2d 1381.

A section 2—1401 petitioner is required to allege and prove the existence of a meritorious defense or claim in the original action (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 221, 499 N.E.2d 1381), or to the resulting damage award (see *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 613, 190 N.E.2d 348), as well as due diligence in both the presentation of the claim or defense and the filing of the petition. (*Klein v. La Salle National Bank* (1993), 155 Ill. 2d 201, 205, 613 N.E.2d 737; *Airoom*, 114 Ill. 2d at 220-21.) In other words, petitioner bears the burden of showing that, if the ground for relief

asserted in the meritorious defense had been known when the complained-of judgment was rendered, the failure to discover and present it at that time was not the result of petitioner's own lack of diligence. (*Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 433 N.E.2d 253.) In determining diligence, courts look to whether petitioner, at the time of the entry of the judgment and after making every effort in his power, failed to raise or discover the asserted grounds through no fault or neglect of his own. (*Gayton v. Levi* (1986), 146 Ill. App. 3d 142, 148, 496 N.E.2d 1045.) Thus, relief under section 2—1401 is inappropriate when an issue should have been presented in the initial proceeding, and the petitioner reasonably could have done so. *Goncaves v. Saab* (1989), 184 Ill. App. 3d 952, 538 N.E.2d 142, *appeal denied* (1989), 127 Ill. 2d 615, 545 N.E.2d 110.

A party opposing a section 2—1401 petition may contest the petitioner's allegations by way of pleading, affidavit, and the trial record itself. In light of the pleadings, "[i]f a disputed factual issue exists material to whether relief is justified, an evidentiary hearing is required." (*Klein*, 155 Ill. 2d at 205.) At such a hearing, the petitioner must prove its allegations by a preponderance of the evidence. (*Klein*, 155 Ill. 2d at 205.) In reviewing the trial court's application of these standards, this court may only disturb the judgment if it finds that the trial court abused its discretion. *Airoom*, 114 Ill. 2d at 221.

However, despite the standards enunciated by our supreme court, both trial and appellate courts are continually presented with cases that, while not meeting the rigorous requirements, beg for individualized scrutiny due to the perceived injustice of the particular situation. Thus, Illinois courts have carved out a broad area of circumstances in which a petitioner need not satisfy the standards. This is because a section 2—1401 petition "invokes the equitable powers of the circuit court, which should prevent enforcement of a default judgment when it would be unfair, unjust, or unconscionable." (*Airoom*, 114 Ill. 2d at 225.) The courts "have not considered themselves strictly bound by precedent, and where justice and good conscience may require it a default judgment may be vacated even though the requirement[s]" of *Airoom* have not been met. (*Airoom*, 114 Ill. 2d at 225.) For example, when the petitioner can show that the damages claimed and awarded were unrelated to the injuries claimed in the complaint, and the award was procured through plaintiff's fraudulent behavior, a court may vacate the award regardless of diligence. See *Elfman*, 27 Ill. 2d at 612-13 (vacating damage award where defendant caused plaintiff only back and neck injuries, but at *ex parte* hearing, plaintiff deceived court and received compensation for gall bladder operation and psychotherapy, as well).

However, the supreme court has never held that equity can excuse a section 2—1401 petitioner from alleging and proving a meritorious defense. Obviously, if a litigant cannot win, there is no point in vacating a prior judgment. Nonetheless, in *Molden v. Reid* (1990), 200 Ill. App. 3d 495, 558 N.E.2d 239, this court, relying on *Elfman*, dispensed with the proof requirements of section 2—1401 altogether in vacating a punitive damage award it considered excessive. The plaintiff did not procure the award by fraud or any other conduct which the supreme court would recognize as warranting extraordinary equitable relief under section 2—1401. Furthermore, the petitioner pled a meritorious defense to neither the original action nor to the damages awarded, as required by *Elfman*. Apparently, the *Molden* court reasoned that punitive damages should not be awarded because a litigant's attorney was negligent.

■ We decline to follow *Molden* in this case because to do so would render any analysis of section 2—1401 petitions unnecessary. This court could simply affirm the trial court findings that the $3.525 million award was excessive. The conduct of Browning and its attorneys, as well as Williams' entitlement to the award, would be irrelevant. Indeed, a strict application of *Molden* would effectively dispense with the proof requirements of section 2—1401. (See *Klein*, 155 Ill. 2d at 205-06.) Moreover, *Molden* is inconsistent with many of our prior decisions in which we stressed that a section 2—1401 action is not to be used simply to excuse an attorney's negligence. (See *Shapira v. Lutheran General Hospital* (1990), 199 Ill. App. 3d 479, 483, 557 N.E.2d 351.) In our view *Molden* involved unique circumstances— those involving punitive damage awards, which as the court noted, are disfavored in the law and uniquely a matter for the jury to determine after hearing both parties' presentation of evidence. (*Molden*, 200 Ill. App. 3d at 502.) We, therefore, must follow the rules set forth in *Airoom* and *Klein*, and for the reasons that follow, we reverse the trial court's decision and remand this case for a full evidentiary hearing on the section 2—1401 petition.

### 1. MERITORIOUS DEFENSE

The trial court made no findings regarding Browning's allegation and proof of a meritorious defense. Browning insists that it has alleged a meritorious defense to each of Williams' nine counterclaims. Williams argues that, at best, Browning has alleged a defense to only four of them. Determination of this issue requires close examination of the contracts, as well as testimony detailing the course of dealing between Browning and Williams. Clearly, this is the type of dispute that *Klein* requires the trial court to resolve in an evidentiary

hearing on the section 2—1401 petition. In any event, Browning's ability to prove a meritorious defense to Williams' claims is only of moment insofar as it undermines the validity of the damage award. This is because the trial court vacated only the damage award. Thus, Browning, like the petitioner in *Elfman*, is required to plead and prove a meritorious defense to the damages themselves. We leave that determination to the trial judge, as well; however, the trial court's failure to make findings on the existence of a meritorious defense renders his granting of the petition an abuse of discretion.

## 2. DUE DILIGENCE

Browning alleged that its attorney, Westler, became "insane" at some point during the underlying proceedings. The only evidence supporting this allegation is a largely self-serving affidavit sworn by Westler, which Browning filed in support of the 2—1401 petition. The affidavit detailed the difficulties which led Westler not only to allow Browning to lose without presenting a defense but to embark upon a course of conduct designed to cover up his mishandling of the case. The cover-up included lying to Browning to mislead it into thinking the case was proceeding without problem. The affidavit briefly mentions that Westler was depressed and sought psychiatric help. No time-frame is provided. No medical evaluations were cited. Williams disputed the claim of insanity, arguing that Westler had simply been negligent in his representation. Williams' counsel wished to present medical testimony to refute the allegations in Westler's affidavit. The trial court explicitly refused to hear testimony on the issue and summarily granted the petition, stating:

> "[B]ecause no defense was presented, because of the deficiency of Mr. Westler, that the Browning Company has met all the requirements of exercising due diligence and presenting the motions in a timely fashion, not having a chance to present they [*sic*] of the case, for that reason the judgment of the jury verdict of 4-4-91 is vacated***."

For the trial judge to find as he did without holding a hearing on all the factual issues raised by the pleadings was an abuse of discretion.

At the least, the dispute as to the explanation for Westler's conduct required the trial court to hold an evidentiary hearing (*Klein*, 155 Ill. 2d at 205), to determine whether Westler's conduct was merely the result of incompetence, which surely is not a basis for a

finding of due diligence (*Shapira*, 199 Ill. App. 3d at 483), or of some actual illness which could excuse his neglect.[1]

We note parenthetically that there is ample indication in the record that Browning suspected that something was amiss in the case when Westler continued to report that the summary judgment motion on counterclaim IX was still pending after two years. In fact, the record shows that Browning, through UMA, contacted American Lawyer's Quarterly (ALQ), a lawyer listing service, to help it in communicating with counsel. Yet, Browning never took the simple step of contacting the court to inquire about its case. A litigant has an independent duty to follow the progress of its case "rather than to merely assume that \*\*\* counsel is doing everything which is necessary and proper in the conduct thereof." *American Reserve Corp. v. Holland* (1980), 80 Ill. App. 3d 638, 644, 400 N.E.2d 102.

Furthermore, numerous letters in the record indicate that ALQ was in contact with lead attorney Abrams during the time period in question. Indeed, in one of the correspondences, dated April 30, 1991, *after the damage trial*, ALQ represents to Browning that Abrams told it that he had met with Judge McCourt on April 26, 1991, and that at that time the judge had assured him that the motion for summary judgment on counterclaim IX, which the judge had granted almost two years earlier, would be ruled on soon. In a sworn affidavit attached to Browning's petition, however, Abrams contends that he did not know of the 1989 summary judgment decision until May 13, 1991, after being notified by Browning. Given the ALQ correspondences, Abrams' claim in his affidavit that he had no knowledge that the case was going awry is suspicious, at best.

We are troubled that the trial judge apparently ignored Abrams' role and responsibility in the case. In fact, the trial judge pinned any blame for Abrams' neglect squarely on the shoulders of Williams' attorney, assailing him for not sending Abrams notice of the damage hearing. However, Abrams' affidavit asserts that he was no longer involved in the case and that Westler had full responsibility. If that is so, Williams should not be penalized for failing to notify him.

Although there are cases which hold that equity often mitigates in favor of notifying attorneys of default judgments (*Manny Cab Co. v. McNeil Teaming Co.* (1975), 28 Ill. App. 3d 1014, 1020-21, 329 N.E. 2d 376, following *Ellman v. De Ruiter* (1952), 412 Ill. 285, 106 N.E.2d 350), given the multitude of unanswered questions here, Williams'

---

[1] Indeed, Abrams' affidavit states that Westler told him that he was afraid to inform Abrams and Browning about losing the summary judgment motion on count IX of the countercomplaint. Fear is not insanity.

failure to give Abrams notice of the damage hearing, standing alone, cannot be the basis for granting the section 2—1401 petition. This places too much of the responsibility upon Williams for the mistakes of Browning's attorneys.

For the foregoing reasons, we vacate the decision of the circuit court granting the section 2—1401 petition. We remand this case for a full evidentiary hearing on whether Browning can prove a meritorious defense to Williams' damage claims and whether the conduct of Browning's attorneys amounted to an appropriate excuse for not presenting the defense, as opposed to simple professional malfeasance.

Vacated and remanded.

MANNING, P.J., and CAMPBELL, J., concur.